## Fuller v. Carrs Fork Coal Co. et al.

Oct. 10, 1939.

26

M. K. Eblen for appellant.

Craft & Stanfill, J. C. Burnette and H. H. Smith for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

There were five claimants of the industrial accident compensation after Green Fuller lost his life in appellant's mine on November 19, 1934, namely: (1) His mother, (2) his wife, Jane Fuller, (3) his bigamous wife, Grace Breeding, (4) his posthumous child, Green Breeding Fuller, Jr., born five months after his death, and (5) an illegitimate child of Pearl Hall, born about four months after Fuller's death. The mother eventually dismissed her claim. The Workmen's Compensation Board reached the conclusion that the evidence was not sufficient to establish Fuller as the father of Pearl Hall's child, principally because of her low character and promiscuous misconduct. The Board found as a fact that his wife, Jane, had voluntarily abandoned him and had been living in adultery in Ohio, and thereby

had forfeited her right to compensation. It found that Grace Breeding had entered into the marriage relation in good faith, believing and having reason to believe that Fuller had been divorced, and that her child was the posthumous son of the deceased workman. Accordingly, it awarded the compensation to her and her child. The circuit court, upon a review of the proceedings at the instance of Jane Fuller, entered judgment sustaining the award. She appeals from that judgment.

Fuller stood high in low circles. The competition among the three women for his attentions was carried into the conflict for his compensation, but in this forum the contest is only between the legitimate widow and the bigamous widow.

Section 4894, of the Statutes, authorizes the award of compensation to a bigamous widow who had entered into the marriage relation in good faith, believing the employee had been divorced from his wife, if she was dependent and living in his household. Franklin Fluorspar Company v. Bell, 247 Ky. 507, 57 S. W. (2d) 481; Black Mountain Corporation v. Cobb, 260 Ky. 662, 86 S. W. (2d) 662; Hatfield-Campbell Creek Coal Company v. Adams, 275 Ky. 744, 122 S. W. (2d) 787. Section 4895, of the Statutes, provides that posthumous children and recognized illegitimate children are included within the terms of Section 4894, establishing the presumption of dependency if they were living with or being actually supported by the employee at the time of the accident. We have held that the child of a bigamous marriage is entitled to compensation under evidence tending to show that the father had recognized his parental responsibility. Lockhart's Guardian v. Bailey Pond Creek Coal Company, 235 Ky. 278, 30 S. W. (2d) 955, 957. In that opinion we observed:

"It may be noticed that there is an incongruity in providing as an essential condition to a recovery of compensation by a posthumous child that he should be living with or actually supported by the employee at the time of his death. This may at some time present an interesting question."

The claim made in behalf of Pearl Hall's baby presented such a case. But it is not being prosecuted. We do have presented a claim by a posthumous child of a bigamous marriage. It could probably be said that the legal recognition of a good faith marriage upon the part

of the mother made this child legitimate under the terms of Section 2099, Statutes, and the mother was living with and being actually supported by the employee at the time of the accident. But his adjudged right cannot be and is not questioned by the appellant.

The presumption of dependency of a wife is conditioned that she had not voluntarily abandoned her husband at the time of the accident. Section 4894, Statutes. If, as a matter of fact, the husband had abandoned his wife, or she was justified in leaving him because of his mistreatment or misconduct, the abandonment is deemed to have been involuntary on her part. Per contra, if she was at fault, such as being guilty of lewd and adulterous conduct, and the husband was legally justified in leaving her, the abandonment will be attributed to her and be deemed voluntary. Layman-Calloway Coal Company v. Martin, 209 Ky. 690, 273 S. W. 496; Hill v. Hill, 239 Ky. 745, 40 S. W. (2d) 367.

The question here is whether there was any evidence to support the decision of the Board that the wife had voluntarily abandoned the husband within the foregoing rules. The parties were married in March, 1930. Jane testified that they lived at her mother's about a month and that he then went back to his mother's home where "he stayed right on." The evidence shows, however, that the parties lived together off and on. Her sister testified that Jane had lots of trouble with Green going with other women, and expressed the conclusion that she had left him because of it. But it appears that she continued the marital status until in September, 1932, when he was put in the Breathitt County jail, under judgment of the Federal Court, to serve a six months' sentence for boot-legging. He was put in on Monday and Jane went to Dayton, Ohio, on the following Saturday. Fuller got out of jail in January or February, 1933. The marriage ceremony between Green and Grace took place in Whitesburg on December 23, 1933. They acquired some furniture and went to live in a coal camp in April, 1934, and the evidence tends to show that the young man had settled down and lived with his bigamous wife peaceably and in comparative good behavior until he was killed. Meanwhile, Jane was living in different cities in Ohio as the wife of Tommy Davis. She denied the substantial proof to that effect including the testimony that they were put in jail as Mr. and Mrs. Tommy Davis for fighting on the street;

but the burden cast by the affirmative evidence is too heavy to be thrown off by a mere denial. In the spring of 1933, Jane returned to Kentucky to see her sick brother. She says she lived with her husband a week at her mother's home before she returned to Ohio. There was no evidence but hers to that effect. She was asked: "You went voluntarily, I take it, of your own free will and accord?" and she answered: "Yes." The context and the circumstances refute the interpretation of appellant's counsel that the witness was referring to having come voluntarily from Ohio to see her sick brother. She first went to Ohio, then came back to Kentucky, and again went to Ohio. The context shows both the interrogator and the witness had this return to Ohio in mind. The words "went" and "come" cannot be put in reverse.

The exact time that Jane began living with Davis is not definitely shown, and the misconduct of a wife after her husband's abandonment does not control the decision of who was at fault in the beginning. And while the record would have sustained a decision that it was Green who first abandoned his wife, in the legal sense, we think the record also supports, as well, the conclusion of the Compensation Board that the wife voluntarily abandoned the husband; hence, that she was not entitled to the compensation.

The judgment is affirmed.