PATHFINDER COACH DIVISION OF SUPERIOR COACH
CORP., et al. *v.* COTTRELL, et al.

Jan. 26, 1953

No. 38536          17 Adv. S. 33          60 So. 2d 383

*Lipscomb & Ray,* for appellants.

*Crawley & Brooks,* for appellee.

ARRINGTON, J.

This is an appeal by Pathfinder Coach Division of Superior Coach Corporation and Hartford Accident and Indemnity Company from a judgment of the Circuit Court of Attala County affirming an order of the Workmen's Compensation Commission awarding compensation to Claudie Dotson Cottrell, as the widow, and Lyda Pearl Scott, as the child of Andy Cottrell.

The undisputed facts reveal that the appellee, Claudie Dotson Cottrell, was married to one Charles Scott on April 24, 1932. To this union was born one child, Lyda Pearl Scott, one of the appellees herein. In 1936, the Scotts separated permanently, there being some talk of a divorce, but no divorce was ever obtained by either party. Charles Scott was living at the time of the death of the deceased, Andy Cottrell. On March 14, 1939, Claudie Dotson Scott entered into a ceremonial marriage with Andy Cottrell. From that date, Claudie Scott and Andy Cottrell lived together in Attala County, Mississippi, as husband and wife, until the death of Andy Cottrell on May 1, 1951. During that period Lyda Pearl Scott lived with her mother and Andy Cottrell, being wholly dependent upon him for her support, and from the evidence it is clear that Andy Cottrell treated her in every way as if she were his own child.

It is stipulated in the record that Andy Cottrell's death occurred while he was an employee of Pathfinder Coach Division of Superior Coach Corporation, and that

his death arose out of and was in the course of his employment.

The appellant argues on this appeal that the provisions of Sec. 2(12) and Sec. 2(14) of the Workmen's Compensation Law, Chap. 354 of the Laws of Miss. 1948, as amended by Chap. 412 of the Laws of Miss. 1950, are unconstitutional. Sec. 2(12) defines "child" as follows: " 'Child' shall include a posthumous child, a child legally adopted prior to the injury of the employee, a child in relation to whom the deceased employee stood in the place of a parent for at least one year prior to the time of injury, and a stepchild or acknowledged illegitimate child dependent upon the deceased, but does not include married children unless wholly dependent on him. . . ."

Sec. 2(14) defines widow as follows: "The term 'widow' includes the decedent's legal wife, living with him or dependent for support upon him at the time of his death, or living apart for justifiable cause, or by reason of his desertion at such time, provided, however, such separation had not existed for more than three years without an award for separate maintenance or alimony or the filing of a suit for separate maintenance or alimony in the proper court in this state. The term 'widow' shall likewise include one not a legal wife, but who had entered into a ceremonial marriage with the decedent at least one year prior to his death, and who on the date of the decedent's death stood in the relationship of a wife, provided there was no living legal spouse who had protected her rights for support by affirmative action as hereinabove required. The term 'widow' or 'widower' as contemplated in this act shall not apply to any person who has since his or her separation from decedent entered into a ceremonial marriage or lived in open adultery with another."

The appellant concedes that Claudie Dotson Scott Cottrell comes within the purview of Sec. 2(14) and that she would be entitled to the death benefits authorized by

the act if the above quoted provision is valid. However, appellant contends that the said provision is unconstitutional as it is in conflict with the public policy of the state in that it allows a bigamous wife to receive benefits.

Counsel points out the fact that he is not attacking the constitutionality of the workmen's compensation law as a whole, but only Sec. 2(12) and 2(14), as set out above. ██ ██ Though citing no specific provision of the Constitution prohibiting such legislation, counsel for appellant would have this Court draw from Secs. 18, 201, and 241 of the Constitution of 1890, a paramount public policy prohibiting legislation which would allow a bigamous wife to recover benefits under the workmen's compensation law. We are of the opinion that these sections do not announce such policy. Sec. 18, which provides enjoyment of all religious freedom, but does not justify acts of licentiousness injurious to morals, and Sec. 201, which requires the legislature to encourage the promotion of intellectual, scientific, moral and agricultural improvement by establishing free public schools, cannot be stretched out of context so as to proclaim a public policy prohibiting the provisions which we have before us. Sec. 241, which disfranchises a person convicted of bigamy, even if otherwise qualified to vote, announces no broad public policy in regard to bigamous relationships, but only constitutes a specific restriction on the legislature.

It is almost universally held that ██ ██ a workmen's compensation law is authorized under the police power of the state as furthering a sound public policy. 58 Am. Jur., Workmen's Compensation, Sec. 9. The Mississippi Workmen's Compensation Law regulating the responsibility of employers for the injury or death of employees bears so close a relationship to the protection of the lives and safety of those concerned as to be a proper exercise of the police powers reserved to the state.

In the instant case, we have been urged by counsel for appellant to declare the above quoted provision of the workmen's compensation law unconstitutional for the reason that it is opposed to the public policy of this state in that it allows a bigamous wife to receive death benefits under it for the death of her putative husband, despite the legislature's enactment of said provision which constitutes an announcement by that body that the public policy of this state is that all such persons as are embraced by its provisions are entitled to the benefits of the law. One of the fundamental principles of judicial review is that in the determination of public policy the acts of the legislative body shall be looked to because the legislative act, if otherwise constitutional, declares the policy of the state and is final so far as the courts are concerned. 11 Am. Jur., Constitutional Law, Sec. 139.

In the case of Miss. State Tax Commission v. Flora Drug Co., 167 Miss. 1, 148 So. 373, the court quoted with approval from Sutherland on Statutory Construction, Vol. I, Sec. 65, 2d ed., as follows: ''Statutes cannot be declared invalid on the ground that they are unwise, unjust, unreasonable, or immoral, or because opposed to public policy, or the spirit of the Constitution.'' And in Albritton v. City of Winona, 181 Miss. 75, 178 So. 799, the Court said: ''In determining whether an act of the Legislature violates the Constitution, the courts are without the right to substitute their judgment for that of the Legislature as to the wisdom and policy of the act and must enforce it, unless it appears beyond all reasonable doubt to violate the Constitution. 'Nor are the courts at liberty to declare an Act (of the legislature) void, because in their opinion it is opposed to a spirit supposed to pervade the Constitution, but not expressed in words.' 1 Cooley, Constitutional Limitations (8 Ed.), at page 351, quoted with approval in Mississippi State Tax Commission v. Flora Drug Co., 167 Miss. 1, at page 20, 148 So. 373, at page 376.'' See also Russell Invest-

ment Corp. v. Russell, 182 Miss. 386, 182 So. 102; Drummond v. State, 184 Miss. 738, 185 So. 207.

In Green v. Frazier, 253 U. S. 233, 40 S. Ct. 499, 502, 64 L. Ed. 278, the United States Supreme Court said there, as we do here: "Questions of policy are not submitted to judicial determination, and the courts have no general authority of supervision over the exercise of discretion which under our system is reposed in the people or other departments of government. . . . With the wisdom of such legislation, and the soundness of the economic policy involved we are not concerned. Whether it will result in ultimate good or harm it is not within our province to inquire." Albritton v. City of Winona, supra.

The provisions in Sec. 2(12) and (14) represent a legislative attempt to protect an acknowledged illegitimate child who is dependent upon a deceased laborer, and a putative widow who has entered into a ceremonial marriage with decedent and who stood in the relationship of a wife at his death, provided no living legal spouse had protected her rights by affirmative action as set forth in the statute. The essential basis of the latter classification is dependency under a ceremonial marriage, and not the legality of the marriage itself. We cannot say that economic dependency under these circumstances, both as to the wife and illegitimate child, is an insufficient basis for the legislature to grant benefits under the workmen's compensation act. And no doubt that body had in mind the extreme hardship upon such dependents in the absence of such a provision, and the fact that otherwise they would be thrown upon the charitable resources and institutions of the state.

Other states and other statutes support the classifications herein by recognizing the rights of a putative widow who has acted in good faith. To that extent those decisions are recognitions of the fact that a legislature can properly decide that under a workmen's compensa-

tion law, based essentially upon the economic fact of dependency, a putative widow and an acknowledged illegitimate child dependent upon the deceased workman are proper beneficiaries under the act.

In Eason v. Alexander Shipyards, Inc., 47 So. 2d 114 (La. 1950), the deceased workman, Eason, married a woman in 1940 and in the same year they separated. In June, 1945, Eason married Bertha, at which time the workman's legal wife was still alive. They continued to live together until the worker's death in 1947. Two children were born to Eason and Bertha. The Louisiana Statute provides that although a marriage is void, it nevertheless produces "its civil effects as it relates to the parties and their children, if it has been contracted in good faith." An award to Bertha and her two children by the deceased was affirmed. This holding was stated to be "the settled jurisprudence in this state." The court cited numerous earlier cases to that effect. These Louisiana decisions are discussed with approval in Malone, Louisiana Workmen's Compensation Law (1951), Sec. 303.

The Kentucky statute authorizes the award of compensation to a bigamous widow who has entered into the marriage relation in good faith, believing the employee had been divorced from his wife, if she was dependent and living in his household. Fuller v. Carrs-Fork Coal Co., 280 Ky. 25, 132 S. W. 2d 540 (1939), applied this provision to a situation of that sort. A more recent Kentucky case is Ritchie v. Katy Coal Company, 231 S. W. 2d 57 (Ky. 1950).

In Perry v. Sun Coal Co., 183 Tenn. 141, 191 S. W. 2d 181 (1945), the employee, without obtaining a divorce, married claimant. On the latter date, he was legally married to his first wife. Later, the employee obtained a divorce but did not remarry the claimant. Although the marriage was not legal, the court upheld an award of compensation. The workman held the claimant out

as his wife, and she was dependent upon him. She had acted in good faith and did not think another marriage to the workman was necessary. The Tennessee Court said that "the purpose of the compensation statute was to provide for dependents of deceased workmen; that dependency is the true basis of the right 'rather than blood or marriage'."

In Moore Shipbuilding Corp. v. Accident Commission, 185 Calif. 200, 196 Pac. 257, 13 A. L. R. 676 (1921), the court held that the fact that the mother of a child was living in open adultery with a man does not prevent the child from being a food-faith member of his family or household, within the meaning of the California Workmen's Compensation Act, so as to be entitled to compensation as a dependent in case of his death. The court held that the California Legislature had the power to enact the workmen's compensation law and to provide for dependents. Hence the sole question was whether the legislature could properly exercise its discretion in authorizing awards to an illegitimate child as a dependent under these circumstances. In upholding the classification, the Court said:

"As has been pointed out, the benefits of this law are not provided as an indemnity for negligent acts committed, or as compensation for legal damages sustained, but as an economic insurance measure to prevent a sudden break in the contribution of the worker to society by his accidental death in the course of his employment. From this economic standpoint it makes no difference whether the workman's earnings are being distributed to those whose support he has voluntarily assumed, or to those who are legally entitled to such support. In either case, they are the reliance of dependent members of society. The only difficulty is that where there is no legal dependence it is harder to determine that the contribution of support has been made so as to constitute the recipient a dependent in good faith.

"The power of the legislature to extend the benefit of industrial accident insurance beyond the wage earner himself being recognized, it is left to reasonable legislative discretion, in the light of the general purposes of these laws, to determine what dependents shall become the distributees of the indemnity assessed against the industry, and we do not think we are compelled to look to analogies of the common law, or to the limitations of compensation acts in force at the time our constitutional provision was adopted, to fix the measure of the legislative power thus conferred."

In Temescal Rock Co. v. Industrial Accident Commission, 180 Calif. 637, 182 Pac. 447, 13 A. L. R. 683 (1919), the California Court upheld an award to a woman living with an employee under a ceremonial marriage, both parties believing in good faith that they were legally married, although they in fact were never married. The award was sustained against the argument that it violated the public policy of the state. The statute was based upon the legislative power to classify dependents in fact. See also Sledd v. State Compensation Commissioner, 111 W. Va. 509, 163 S. E. 12, 80 A. L. R. 1424 (1932), where a putative widow was allowed compensation; Campton v. Industrial Commission of Utah, 106 Utah 571, 151 Pac. 2d 189, 154 A. L. R. 691 (1914), where compensation was awarded to dependent minor children of a woman living in adultery with a workman killed in the scope of his employment. See also Anno., 154 A. L. R. 698, "Children of one with whom deceased workman was living in illicit relations as dependents within workmen's compensation act"; Anno., 80 A. L. R. 1428, "Bigamous character of marriage as affecting right of one party thereto to compensation for death of other under workmen's compensation act"; Anno., 86 A. L. R. 865, 880-883; Kendall v. Housing Authority of Baltimore City, 76 Atl. 2d 767 (My. 1950), where award was granted to putative widow and two minor children under

statute authorizing the same to "dependent persons at the time of death."

The Mississippi Statutes are not similar to those of any other state in their particular terminology. They clearly cover the claims of appellees. The previously cited decisions and statutes of several of the states which authorize awards to putative widows and illegitimate children who are dependent upon deceased workmen are relevant here, not because of similarity, but because they clearly demonstrate that other state legislatures and courts have found the authorization of awards to such dependents entirely reasonable and consistent with the purposes of a workmen's compensation law. ██ We think that the questioned provisions of the statute are within the constitutional power of the legislature, and that they warrant the awards made by the commission to appellees. For the same reasons we do not think that they violate the due process and equal protection clauses of the state and federal constitutions.

The appellee filed a cross-appeal herein, assigning as error that the court erred in overruling motion to dismiss appellant's appeal. We find this assignment to be without merit.

Affirmed on direct and cross-appeal.

*Roberds, P. J.,* and *Hall, Lee,* and *Holmes, JJ.,* concur.