# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-01528-SCT

*MARK MATTHEWS a/k/a MARK DAVID*
*MATHEWS a/k/a MARK D. MATHEWS a/k/a*
*MARK DAVID MATTHEWS a/k/a MARK*
*MATHEWS*

*v.*

*CITY OF MADISON, MISSISSIPPI*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:              08/29/2012
TRIAL JUDGE:                   HON. JOHN HUEY EMFINGER
TRIAL COURT ATTORNEYS:         CHRIS N. K. GANNER
                               JOHN HEDGLIN
COURT FROM WHICH APPEALED:     MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        CHRIS N. K. GANNER
ATTORNEY FOR APPELLEE:         JOHN HEDGLIN
DISTRICT ATTORNEY:             MICHAEL GUEST
NATURE OF THE CASE:            CRIMINAL - MISDEMEANOR
DISPOSITION:                   AFFIRMED - 07/31/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Mark Matthews was convicted of simple assault and disorderly conduct in Madison

County Municipal Court.  The decision subsequently was affirmed on appeal by the County

Court of Madison County and the Madison County Circuit Court.  The Court of Appeals

found no error and also affirmed.  *Matthews v. City of Madison*, __ So. 3d __, 2013 WL

5184708, *2 ¶11 (Miss. Ct. App. Sept. 17, 2013).  While the result reached by the Court of

Appeals is correct, we granted certiorari to clarify the proper burden of proof when the Castle Doctrine is asserted as a defense.

## FACTS AND PROCEDURAL HISTORY

¶2.    The following facts are taken from the Court of Appeals opinion:

> ¶2.  Matthews and Brittany Sullivan had a daughter, Macy Kate, in 2008. Because they were not married, custody arrangements were established by a final judgment of filiation and support filed in Madison County Chancery Court, granting joint legal and physical custody to both parents. The custody agreement provided that Matthews had custody of Macy Kate on Wednesday nights and was to return her "the next morning at 7:30 a.m. or such time [that accommodated] both [parents'] travel to work."
>
> ¶3.   On the morning of Thursday, May 26, 2011, Matthews arrived at Brittany's residence, which was also the residence of her mother, Pam Sullivan, to drop off Macy Kate. Matthews parked his vehicle at the curb, because he was required to park on the street and stay off the Sullivans' property as a result of a trespassing conviction from a year earlier. Pam exited the house, and Matthews asked Pam where Brittany was. Pam testified that she told him that Brittany had spent the night at her grandparents' house because she did not want to see Matthews.  Pam walked to the rear passenger door of the vehicle and opened it to unbuckle Macy Kate from her car seat.  Matthews, who had exited the vehicle, slammed the door on Pam, pinning her in the door. After a struggle, Pam freed herself from the door, removed Macy Kate, and walked onto her property, where Matthews was not allowed to go.
> . . .
>
> ¶5.   Pam filed an affidavit against Matthews for assault. Matthews was convicted of simple assault and disorderly conduct in the City of Madison Municipal Court.
>
> ¶ 6.  Matthews appealed to the County Court of Madison County. After a bench trial de novo, Matthews was found guilty of simple assault under Mississippi Code Annotated section 97-3-7(1)(a) (Rev. 2006) and disorderly conduct for refusing to comply with a police officer's request under Mississippi Code Annotated section 97-35-7(1) (Rev. 2006).

*Matthews v. City of Madison*, 2013 WL 5184708, ** 1-2 (Miss. Ct. App. Sept. 17, 2013).

2

¶3. The Madison County Circuit Court affirmed the county court and found, in part, that the Castle Doctrine did not apply, therefore, Matthews was not entitled to the statutory presumption. On appeal to the Court of Appeals, Matthews argued that the county court had erred because it had failed to apply the Castle Doctrine. *Id.* at *2. Specifically, Matthews asserted "that under the Castle Doctrine, the assault was justified to prevent Pam from kidnaping his child." *Id*. The Court of Appeals stated that "[t]he statute requires that the 'person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm . . . .'" *Id.* (quoting Miss. Code Ann. § 97-3-15(3) (Rev. 2006)). No evidence was presented that Matthews had feared imminent death or great bodily harm to himself or Macy Kate." *Id.* at * 2. Therefore, the Court of Appeals found the county court did not err in refusing to apply the doctrine. *Id*. at 3.

## DISCUSSION

¶4. When reviewing the findings of a county-court judge sitting in a bench trial without a jury, we will reverse only if his or her findings are manifestly in error or clearly wrong. *Pride Oil Co., Inc. v. Tommy Brooks Oil Co.*, 761 So. 2d 187, 193 (Miss. 2000) (quoting *Amerson v. State*, 648 So. 2d 58, 60 (Miss. 1994)). "The trial judge has sole authority to determine the credibility of a witness when sitting as the trier of fact in a bench trial." *Pride Oil Co.*, 761 So. 2d at 193. We will affirm a trial judge sitting without a jury on a question of fact unless substantial evidence shows the trial judge was manifestly wrong. *Id*.

¶5. In his petition for certiorari, Matthews argues the Court of Appeals findings regarding the application of the Castle Doctrine are in conflict with this Court's prior decisions.

3

Matthews states that the statute's presumption justifying defensive force has no requirement for proof that he be in "reasonable fear" before using defensive force. *See, e.g.,* ***Newell v. State***, 49 So. 3d 66, 68-69 (Miss. 2013).

¶6.     The City of Madison argued in its supplemental brief that the Castle Doctrine does not apply to this case because it deals with "justifiable homicide." Whether the Castle Doctrine may be applied as a defense to a charge of simple assault is a matter of first impression for this Court. The Legislature adopted the Castle Doctrine in 2006, and it was codified at Mississippi Code Section 97-3-15(3)-(4).[1] *See* Miss. Laws 2006, Ch. 492, § 1 (eff. July 1, 2006). Since the passage of the law, we have had the occasion to interpret the Castle Doctrine only when deadly force was used. *See* ***White v. State***, 127 So. 3d 170 (Miss. 2013); ***Sanders v. State***, 77 So. 3d 484 (Miss. 2012); ***Maye v. State***, 49 So. 3d 1124 (Miss. 2010); ***Newell v. State***, 49 So. 3d 66 (Miss. 2010). Interpreting the doctrine for the first time, this Court stated that there are two prongs to Mississippi's Castle Doctrine. *See* ***Newell***, 49 So. 3d at 74. In the case before us, subsection (4) does not apply because it deals with the use of "deadly force under subsection (1)(e) or (f) . . . ." Miss. Code Ann. § 97-3-15(4) (Rev. 2006).

---

[1]Subsection (1) and (2) of Section 97-3-15 deal with the "killing of a human being" and are inapplicable to the case *sub judice*. As discussed *infra*, subsection (4) is inapplicable because it relates to the "use of deadly force under subsection (1)(e) or (f)." In addition, subsection (5) is inapplicable because it deals with civil cases. *See* Miss. Code Ann. § 97-3-15 (Rev. 2006).

4

¶7.    The other prong requires the trier of fact to look to the circumstances listed in subsection (3), which states in pertinent part that an individual "who uses defensive force *shall be presumed* to have reasonably feared . . . the commission of a felony upon him . . . against a vehicle which he was occupying . . . if the person against whom the defensive force was used, was in the process of forcibly entering . . . [an] occupied vehicle . . . ." Miss. Code Ann. § 97-3-15(3) (Rev. 2006) (emphasis added). Thus, the presumption in subsection (3) applies to *any* use of defensive force if it is under one of the circumstances listed in that subsection, not only deadly force.

¶8.    Matthews argues that the felony being committed was kidnapping; he was in a place he had a right to be and was not the initial aggressor and was not engaged in any unlawful acts; therefore, the lower court should have applied the statutory presumption to justify Matthews's reaction.[2]  The Court of Appeals found the presumption did not apply to Matthews because there was no evidence that Matthews was in fear of imminent death or great bodily harm to him or Macy Kate. *Matthews*, 2013 WL 5184708, ** 2-3. The language used by the Court of Appeals is in error. We find the application of the presumption does not depend on the existence of reasonable fear in the defendant; rather, the presumption applies if one of the circumstances in subsection (3) is met. *See Newell v. State*, 49 So. 3d 66 (Miss. 2010).

---

[2]We note that Matthews's argument is misplaced in that he quotes the language in subsection (4) regarding who was the initial aggressor and whether he or she was engaged in unlawful activity. *See supra* note 1.

¶9.     In *Newell*, this Court found the defendant was entitled to a jury instruction on the Castle Doctrine's statutory presumption. *Newell*, 49 So. 3d at 78. There, Newell claimed that he had shot the victim after the victim threatened him, tried to remove him from his truck, threatened to stab him, and then reached for a knife. *Id.* at 68-69. In interpreting Section 97-3-15(3), we found that, if the occupant of a vehicle is still in danger after exiting the vehicle and is "still in the immediate premises thereof, he should be allowed to use reasonable force to defend against the danger and still be presumed to have acted in reasonable fear of imminent death or great bodily danger." *Id.* at 76-77. This Court held further that, if the trier of fact believed Newell's story of the circumstances that led to the shooting, "he would have been entitled to the presumption in Section 97-3-15(3)." *Id*. at 77.

¶10.     The Court in *Newell* was then faced with the task of deciding whether a jury instruction that was denied properly defined the statutory presumption in Section 97-3-15(3). *Id.* The Court found that the second paragraph of the proposed instruction properly tracked the language of the Castle Doctrine's new presumption. *Id*. In so finding, the Court held that "the jury should have been instructed that, *if it believed Newell's version of the events* surrounding the altercation . . . then it should presume that Newell used defensive force . . . . because he reasonably feared . . . the commission of a felony upon . . . the vehicle which he was occupying." *Id.* at 78 (quoting Miss. Code Ann. § 97-3-15(3) (Rev. 2006)) (emphasis added). Importantly, the Court went on to note that, if the jury had been instructed properly, "the jury may have come to a different conclusion *regarding the reasonableness and necessity* of Newell's action . . . which would have given more weight to [his] self-defense

6

claims." *Id*. (emphasis added). Thus, the holding implies that, although Newell should have been entitled to a presumption if the jury believed him, this presumption could have been rebutted, as the trier of fact must still weigh the reasonableness of the action in light of the presumption.

¶11. The Matthews/Pam altercation before us obviously differs from *Newell*. We find the Castle Doctrine defense does not apply to the facts presented here. The Final Judgment entered by the chancery court, which set out Matthews's and Brittany's obligations regarding child support, custody, and visitation, stated that on Wednesdays, Mark was to pick up his daughter "from day care or Brittany's place of residence" and return her the next morning. The chancery court's order stated Brittany's place of residence was Pam's home. Pam testified that she had Brittany's permission to get the child and that this had occurred on multiple occasions. She alleged that she approached the car, opened the door to take the child following Matthews's scheduled visitation, and this is when the incident occurred. Pam was within her right, as the county-court judge found, to retrieve Macy Kate from Matthew's car. Thus, under these facts, the trial court did not abuse its discretion in finding Matthews guilty of simple assault.

¶12. The trial-court judge, as trier of fact, noted on the record that he found Pam's testimony to be more credible than Matthews's, and that, based on the evidence, "the State has proven beyond a reasonable doubt" that Matthews committed simple assault upon Pam. We do not find any abuse of discretion on the part of the trial judge. Matthews is correct, insofar as the Court of Appeals' language incorrectly states that the Castle Doctrine's

7

presumption justifying defensive force requires proof that he be in "reasonable fear" before using defensive force. This Court finds that Matthews was not entitled to the presumption.

## CONCLUSION

¶13.   We find that the result reached by the Court of Appeals and the trial court is correct. However, we write only to correct the language used in the Court of Appeals opinion and to clarify the proper burden of proof when a defendant asserts the Castle Doctrine as a defense. The judgments of the Court of Appeals and the Madison County Circuit Court are affirmed.

¶14.   **CONVICTION OF SIMPLE ASSAULT AND SENTENCE OF 180 DAYS, WITH THIRTY (30) DAYS TO SERVE AND 150 DAYS SUSPENDED FOR TWO (2) YEARS, WITH CONDITIONS, AND PAY A FINE OF $190, AFFIRMED. CONVICTION OF DISORDERLY CONDUCT AND SENTENCE OF 180 DAYS, WITH FIVE (5) DAYS TO SERVE AND 175 DAYS SUSPENDED FOR TWO (2) YEARS, WITH CONDITIONS, AND PAY A FINE OF $160, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE SHERIFF OF MADISON COUNTY.**

   **DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. KING, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS AND CHANDLER, JJ. COLEMAN, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION. RANDOLPH, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

   **KING, JUSTICE, SPECIALLY CONCURRING:**

¶15.   I agree that Matthews's convictions should be affirmed; however, I write separately to address this Court's critique of the Court of Appeals's discussion of the presumption available to a defendant under the "Castle Doctrine," as codified in Mississippi Code Section 97-3-15. Miss. Code Ann. § 97-3-15(3) (Rev. 2008). The language in the Court of Appeals opinion that is criticized by the majority states: "The statute requires that the 'person who

8

uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm . . . .' *No evidence was presented that Matthews feared imminent death or great bodily harm to himself or to Macy Kate.* Therefore, the county court did not err in refusing to apply the castle doctrine, as there was not sufficient evidence to support the doctrine's application." **Matthews v. City of Madison**, __ So. 3d __, 2013 WL 5184708, at *2 (¶11) (Miss. Ct. App. 2013) (emphasis added) (internal citations omitted).

¶16.    When the Court of Appeals' language is read in conjunction with Matthews's trial testimony, and the language taken in the context of that testimony, it becomes clear that what the Court of Appeals intended to address was the burden of proof to obtain the presumption of the "Castle Doctrine." I agree with the majority that the emphasized language taken in a vacuum is misleading; however, I am concerned that the majority's critique of that language is also misleading. While the majority correctly confronts the issue that the "Castle Doctrine" only applies when one of the circumstances of Section 97-3-15(3) is met, the majority fails to address the initial burden of proof for application of the presumption arising from the "Castle Doctrine." As a result of that failure by the majority, one might conclude that no burden of proof is associated with the application of that presumption. In fact, that failure by the majority would seem to suggest that application of the presumption arising under the "Castle Doctrine" is the product of legal abiogenesis.

¶17.    As with any presumption, the party seeking to avail himself of that presumption bears the burden of proving its applicability. *See* **Strong v. State**, 600 So. 2d 199, 203 (Miss. 1992). Section 97-3-15(3) provides that "[a] person who uses *defensive force* shall be"

9

entitled to the Castle Doctrine presumption if the defensive force was employed in one of the circumstances outlined. Miss. Code Ann. § 97-3-15(3) (Rev. 2008) (emphasis added). Thus, before examining whether one of the circumstances in subsection (3) is met, the initial inquiry must be whether the person adequately proved he was using *defensive force*. In the present case, it was consequently Matthews's initial burden to prove that he used *defensive force*, and *then* that he used such defensive force in a circumstance covered by the "Castle Doctrine." The trial judge, sitting as the trier of fact, found that Matthews failed to meet his burden of proof, as he failed to put forth evidence that the force he used was defensive. While not stated with clarity, I believe that this is the same conclusion reached by the Court of Appeals. Thus, I write separately to clarify that a defendant must initially show that he was using defensive force to avail himself of the "Castle Doctrine."

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**

**COLEMAN, JUSTICE, CONCURRING IN RESULT ONLY:**

¶18. I agree with the result reached by the majority, but, with respect, I disagree with its reasoning. Based on the plain, unambiguous language of Mississippi Code Section 97-3-15, I am compelled to conclude that the Castle Doctrine applies only when a killing of a human being has occurred. I fear the majority expands the Castle Doctrine beyond the scope designated by the Legislature and therefore leads the Court beyond the scope of its constitutionally designated duty as an appellate court. "[T]he courts are without the right to substitute their judgment for that of the Legislature as to the wisdom and policy of the act and

10

must enforce it, unless it appears beyond all reasonable doubt to violate the Constitution." *5K Farms, Inc. v. Miss. Dep't of Revenue*, 94 So. 3d 221, 227 (¶ 21) (Miss. 2012) (quoting *Pathfinder Coach Div. of Superior Coach Corp. v. Cottrell*, 216 Miss. 358, 362, 62 So. 2d 383, 385 (1953)).

¶19.    Section 97-3-15 defines instances in which the killing of a human being is justified. It reads, quite simply, "The killing of a human being by the act, procurement or omission of another shall be justifiable in the following cases . . ." and then enumerates eight instances in which a killing is justified. Miss. Code Ann. § 97-3-15(1) (Rev. 2006). Two of the eight, found in subsections (1)(e) and (1)(f), read as follows:

> (e) When committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, or upon or in any dwelling, in any occupied vehicle, in any place of business, in any place of employment or in the immediate premises thereof in which such person shall be;
>
> (f) When committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished; . . . .

Miss. Code Ann. § 97-3-15(1)(e), (f) (Rev. 2006). Accordingly, a killing is justified when committed under conditions consistent with those I quote above. Nothing in the statute appears to extend the justification to any other crime or event other than the killing of a human being.

¶20.    I now turn to Section 97-3-15(3), wherein the Legislature codified what is popularly known as the Castle Doctrine, and which the majority would extend beyond the parameters of a justified killing. *See Lawson v. Honeywell Int'l., Inc.*, 75 So. 3d 1024, 1030 (¶ 17)

11

(Miss. 2011) ("This Court 'cannot . . . add to the plain meaning of the statute or presume that the legislature failed to state something other than what was plainly stated.'") (quoting *His Way Homes, Inc. v. Miss. Gaming Comm'n*, 733 So. 2d 764, 769 (¶ 20) (Miss. 1999)). In the first six words, Subsection 3 creates a presumption in favor of a "person" who "uses defensive force." So far, nothing in the subsection by itself appears to limit the presumption to a person who has killed another, but the codification of the Castle Doctrine neither ends there nor exists in a vacuum. The presumption in question is that the person who uses defensive force is presumed to have

> reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling, or against a vehicle which he was occupying, or against his business or place of employment or the immediate premises of such business or place of employment, if the person against whom the defensive force was used, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling, occupied vehicle, business, place of employment or the immediate premises thereof or if that person had unlawfully removed or was attempting to unlawfully remove another against the other person's will from that dwelling, occupied vehicle, business, place of employment or the immediate premises thereof and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred.

Miss. Code Ann. § 97-3-15(3) (Rev. 2006).

¶21. The events listed in Subsection 3, quoted immediately above, that the person using force is presumed reasonably to have feared are the very same events listed in Subsection (1)(e) that justify the killing of another human being but that justify nothing else, at least not by operation of Section 97-3-15. "This Court follows the long-standing maxim of statutory construction that 'the Legislature's intention must be determined by the total language of the

12

statute and not from a segment considered apart from the remainder[.]'" *Lawson*, 75 So. 3d at 1029 (¶ 15) (quoting *Manufab, Inc. v. Miss. State Tax Comm'n*, 808 So. 2d 947, 949 (¶ 5) (Miss. 2002)). Because of the choice of the Legislature to so closely tie the circumstances that trigger the presumption to the circumstances that justify a killing, I cannot agree with the majority's conclusion that they have application where no killing occurred. "The Court looks to the whole of a statute to avoid adhering to one sentence or phrase of statute in a way that skews its true meaning." *Lawson*, 75 So. 3d at 1029 (¶ 15). Also, "[i]n interpreting any part of a statute this Court will first look to the statute as a whole to ensure its meaning is not taken out of context." *32 Pitt Bulldogs and Other Prop. v. County of Prentiss*, 808 So. 2d 971, 974 (¶ 13) (Miss. 2002). With respect, I am of the opinion that the majority reaches its conclusion by focusing too closely on Subsection 3 to the exclusion of the remainder of the statute and thereby takes the meaning of Subsection 3 out of the context in which the Legislature chose to place it. *See also* *Kerr-McGee Chem. Corp. v. Buelow*, 670 So. 2d 12, 17 (Miss. 1995) ("When interpreting a statute, '[t]he proper way to determine the real intent of the legislature is to study the words used by it in context.'") (quoting *Back-Acres Country Club, Inc. v. Miss. State Tax Comm'n*, 216 So. 2d 531, 534 (Miss. 1968)).

¶22. Accordingly, where the majority holds the Castle Doctrine does not apply because Pam had permission to enter Mark's car and take Macy Kate, I would hold the Castle Doctrine does not apply because no killing of a human being occurred.

13