# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00750-SCT

*REPRESENTATIVE BRYANT W. CLARK AND*
*SENATOR JOHN HORHN*

*v.*

*GOVERNOR PHIL BRYANT, STATE FISCAL*
*OFFICER LAURA JACKSON, MISSISSIPPI*
*DEPARTMENT OF EDUCATION AND STATE*
*TREASURER LYNN FITCH*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/02/2017 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| TRIAL COURT ATTORNEYS: | WILLIAM B. BARDWELL |
| | LYDIA WRIGHT |
| | KRISSY C. NOBILE |
| | JUSTIN L. MATHENY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM B. BARDWELL |
| | CHRISTINE C. BISCHOFF |
| | JODY E. OWENS, II |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KRISSY C. NOBILE |
| | JUSTIN L. MATHENY |
| NATURE OF THE CASE: | CIVIL - UNCONSTITUTIONAL STATUTE |
| DISPOSITION: | AFFIRMED - 09/13/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. During Fiscal Year 2017, Governor Phil Bryant directed State Fiscal Officer Laura

Jackson to reduce the budgets of various state agencies. In response, State Representative

Bryant W. Clark and State Senator John Horhn brought a declaratory-judgment action against the Governor in Hinds County Chancery Court. They sought preliminary and permanent injunctive relief, a writ of mandamus ordering the Governor to reverse the reductions, and a declaration that Mississippi Code Section 27-104-13 (Rev. 2017) was facially unconstitutional. After an expedited hearing, the chancellor denied the motions for injunctive relief and dismissed the complaint with prejudice. Representative Clark and Senator Horhn now appeal.

¶2. Under our Constitution, the executive has the core power to control the budget of state agencies. Here, the Legislators' arguments that Section 27-104-13 violates the separation-of-powers doctrine miss the mark, as the budget reductions were an exercise of the executive's core constitutional power. Therefore, we affirm the chancellor's final order because Representative Clark and Senator Horhn have failed to overcome the strong presumption that Section 27-104-13 is constitutional.

## FACTS AND PROCEDURAL HISTORY

¶3. Pursuant to Section 27-104-13, Governor Phil Bryant directed State Fiscal Officer Laura Jackson to reduce the budgets of various state agencies in September 2016, January 2017, February 2017 and March 2017. In September 2016, Governor Bryant and Jackson reduced the budgets of state agencies by a total of $56.8 million. Governor Bryant and Jackson also reduced state agencies' budgets by a total of $51 million in January 2017. In February 2017 and March 2017, among other reductions, Governor Bryant and Jackson

2

reduced the budget of the Mississippi Adequate Education Program (MAEP)[1] by $19.8 million.

¶4.    On May 17, 2017, State Representative Bryant W. Clark and State Senator John Horhn (collectively, the "Legislators") sued Governor Bryant, Jackson, the Mississippi Department of Education and State Treasurer Lynn Fitch (collectively, the "Executive"). The Legislators sought a declaration that Section 27-104-13 was facially unconstitutional (or, in the alternative, unconstitutional as applied), a permanent injunction against the Executive's mid-year budget cuts, and a writ of mandamus ordering the Executive to reverse the February 2017 and March 2017 budget reductions to MAEP. The same day, the Legislators also moved for a preliminary injunction against the Executive. On May 30, 2017, the Executive filed its response in opposition to the Legislators' motion for a preliminary injunction.

¶5.    The chancellor held a hearing on the merits of the motion for a preliminary injunction on May 31, 2017. The Legislators and the Executive both argued the merits of the motion. At the close of their arguments, the chancellor convened a conference in chambers. After the conference, the Legislators made an *ore tenus* motion pursuant to Rule 65(a)(2) of the Mississippi Rules of Civil Procedure for the chancellor "to consolidate today's hearing with trial on the merits and to issue a decision and a final judgment." The chancellor then denied the Legislators' request both for a preliminary and a permanent injunction.

---

[1] MAEP is the state school-funding formula. It is governed by Mississippi Code Sections 37-151-1 to -107 (Rev. 2014).

¶6.     In its written order, filed on June 2, 2017, the chancellor denied the motion for a preliminary injunction. It then granted the Legislators' motion to consolidate the hearing on the preliminary injunction with the trial on the merits. Next, the trial court denied the Legislators' request for permanent injunctive relief and dismissed the complaint.

¶7.     The Legislators now appeal. For the Legislators, the issue on appeal is whether a statute allowing the Executive Branch to make appropriations decisions violates the separation-of-powers doctrine under the Mississippi Constitution. The Executive maintains that Section 27-104-13 does not violate the separation-of-powers doctrine where "[t]he executive branch does not improperly perform a function 'at the core' of the power belonging to the Legislature, and [t]he statute fits comfortably within the boundaries of the nondelegation doctrine because it provides adequate standards for the [E]xecutive to follow." While we agree with the Executive that Section 27-104-13 is constitutional, we clarify that this case does not implicate separation of powers because the Executive was exercising its own core power under the Constitution. As the Legislators have failed to overcome the presumption that Section 27-104-13 is constitutional, we affirm the chancellor's dismissal of the complaint.

**STANDARD OF REVIEW**

¶8.     "When addressing a statute's constitutionality, we apply a de novo standard of review, bearing in mind (1) the strong presumption of constitutionality; (2) the challenging party's burden to prove the statute is unconstitutional beyond a reasonable doubt; and (3) all doubts

4

are resolved in favor of a statute's validity." ***Johnson v. Sysco Food Servs.***, 86 So. 3d 242, 243–44 (Miss. 2012) (citations omitted). "The statutes must be shown to be in direct conflict with 'the clear language of the constitution.'" ***5K Farms, Inc. v. Miss. Dep't of Revenue***, 94 So. 3d 221, 227 (Miss. 2012) (quoting ***PHE, Inc. v. State***, 877 So. 2d 1244, 1247 (Miss. 2004)). "'[T]he courts are without the right to substitute their judgment for that of the Legislature as to the wisdom and policy of the act and must enforce it, unless it appears beyond all reasonable doubt to violate the Constitution.'" ***Id***. (quoting ***Pathfinder Coach Div. of Superior Coach Corp. v. Cottrell***, 62 So. 2d 383, 385 (Miss. 1953)). "'When a party invokes our power of judicial review, it behooves us to recall that the challenged act has been passed by legislators and approved by a governor sworn to uphold the selfsame constitution as are we.'" ***Id***. (quoting ***State v. Roderick***, 704 So. 2d 49, 52 (Miss.1997)).

¶9.      "This Court 'will not disturb the factual findings of a chancellor when supported by substantial evidence unless . . . the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.'" ***Sec'y of State v. Gunn***, 75 So. 3d 1015, 1020 (Miss. 2011) (quoting ***A–1 Pallet Co. v. City of Jackson***, 40 So. 3d 563, 567 (Miss. 2010)). Further, we review questions of law de novo. ***Smith v. Wilson***, 90 So. 3d 51, 56 (Miss. 2012).

## ANALYSIS

¶10.     The Legislators claim that Section 27-104-13 is unconstitutional and that the Governor's budget reductions violated the doctrine of separation of powers under the state

5

Constitution. They direct us to *Alexander v. State* for the proposition that Mississippi's separation-of-powers doctrine is absolute, unlike its federal counterpart. *Alexander v. State By & Through Allain*, 441 So. 2d 1329, 1335 (Miss. 1983). The Executive, though, maintains that Section 27-104-13 "is *Alexander*'s articulation of separation of powers—played out in statute." For the Executive, the budget reductions are a mandated exercise of the Executive's constitutional powers.

¶11. We begin our analysis of this issue discussing the language of the statutory provisions implicated in this appeal. The challenged statute, Section 27-104-13, provides, in relevant part:

> (2) The Department of Revenue and University Research Center, utilizing all available revenue forecast data, shall annually develop a general fund revenue estimate to be adopted by the Joint Legislative Budget Committee as of the date of sine die adjournment. If, at the end of October, or at the end of any month thereafter of any fiscal year, the revenues received for the fiscal year fall below ninety-eight percent (98%) of the general fund revenue estimate adopted by the Joint Legislative Budget Committee at the date of sine die adjournment, the State Fiscal Officer shall reduce allocations of general funds and state-source special funds to general fund and special fund agencies and to the "administration and other expenses" budget of the Mississippi Department of Transportation, in an amount necessary to keep expenditures within the sum of actual general fund receipts, including any transfers to the General Fund from the Working Cash-Stabilization Reserve Fund for the fiscal year.

Miss. Code Ann. § 27-104-13(2) (Rev. 2017). The Section also provides Jackson, as the state fiscal officer, with the authority to transfer funds from the Working Cash-Stabilization Reserve Fund (commonly referred to as the "Rainy Day Fund") to the General Fund as needed to supplement the General Fund revenue. *Id*. Under Section 27-104-13, Jackson

also is required to send notice of any action taken under subsection two to the Legislative Budget Office. *Id*.

¶12. Another statutory provision implicated in this appeal is the requirement found in Section 27-103-113 that Mississippi operate on a balanced budget. Section 27-103-113 states: "It shall be the duty of the Legislative Budget Office to prepare an overall balanced budget of the entire expenses and income of the state for each fiscal year . . . ." Miss. Code Ann. § 27-103-113 (Rev. 2017). *See also* Miss. Code Ann. § 27-103-139 (Rev. 2017) (requiring Governor to submit a proposed "balanced budget for the succeeding fiscal year").

¶13. Also at issue in this appeal, the Legislature passed the education appropriation bill for the 2017 fiscal year. The first section of that bill explicitly provided: "The following sums, or so much of those sums as may be necessary, are appropriated out of any money in the State General Fund not otherwise appropriated. . . ." H.B. 1643, 131st Leg., Reg. Sess. (Miss. 2016).

¶14. We begin our constitutional analysis of Section 27-104-13 with the presumption that it is valid and constitutional. *State ex rel. Hood v. Louisville Tire Ctr., Inc.*, 55 So. 3d 1068, 1072 (Miss. 2011). "[W]e will strike down a statute only when it appears beyond a reasonable doubt that it violates the constitution." *Id*. "And, when there is doubt, this Court will construe the statute as constitutional if possible." *Estate of Smiley v. Smiley*, 530 So. 2d 18, 22 (Miss. 1988). On the other hand, though, "'[t]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone,

7

will not save it if it is contrary to the Constitution.'" *Alexander*, 441 So. 2d at 1338 (quoting

*INS v. Chadha*, 462 U.S. 919, 944, 103 S. Ct. 2764, 2780–81, 77 L. Ed. 2d 317, 340 (1983)).

¶15. Turning to our Constitution, the doctrine of separation of powers is enumerated in Sections 1 and 2 of Article 1 of the Mississippi Constitution of 1890:

> Section 1. The powers of the government of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.
>
> Section 2. No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

Miss. Const. art. 1, §§ 1, 2.

¶16. "'Legislative power, as distinguished from executive power, is the authority to make laws. . . .'" *Alexander*, 441 So. 2d at 1338 (quoting *Springer v. Phillipine Islands*, 277 U.S. 189, 202, 48 S. Ct. 480, 482, 72 L. Ed. 845 (1927)). "Legislatures are the voice of the people, charged with the responsibility of enacting statutes for the inhabitants of our State." *W. Line Consol. Sch. Dist. v. Greenville Mun. Separate Sch. Dist.*, 433 So. 2d 954, 957–58 (Miss. 1983). "[E]xecutive power [i]s the power to administer and enforce the laws as enacted by the legislature and as interpreted by the courts." *Alexander*, 441 So. 2d at 1338 (first citing *Quinn v. United States*, 349 U.S. 155, 161, 75 S. Ct. 668, 672, 99 L. Ed. 964, 971 (1954); and then citing *Mabray v. Sch. Bd. of Carroll Cty.*, 137 So. 105, 106 (Miss. 1931)). "Execution is at the core of executive power." *Id*. In *Alexander*, the Court clarified

the realms of these two branches of government. *Id*. Central to its holding, *Alexander*

discussed two separate constitutional powers that continue to shape Mississippi's budgeting

process today: (1) the budget-making power and (2) the budget-control process. *Id*.

¶17.     First, the *Alexander* Court described the budget-making power:

> Constitutionally, budget-making is a legislative prerogative and responsibility
> in Mississippi.  The legislature has the power and prerogative to provide for
> the collection of revenues through taxation and other means and to appropriate
> or direct the expenditure of monies so raised.  Though subject to gubernatorial
> veto, the primary budget-making responsibility vests in the legislature.
>
> This premise has been unequivocally stated in *Colbert v. State*, 86 Miss. 769,
> 39 So. 65 (1905), as follows:
>
>> Under all constitutional governments recognizing three distinct
>> and independent magistracies, the control of the purse strings of
>> government is a legislative function. . . .  The right of the
>> Legislature to control the public treasury, to determine the
>> sources from which the public revenue shall be derived and the
>> objects upon which they shall be expended, to dictate the time,
>> the manner, and the means both of their collection and
>> disbursement, is firmly and inexpugnably established in our
>> political system. . . . The American commonwealths have fallen
>> heirs to this great principle, and the prerogative in question
>> passes to their Legislatures without restriction or diminution,
>> except as provided by their Constitutions, by the simple grant of
>> the legislative power.

*Alexander*, 441 So. 2d at 1339.  Section 63 of the Constitution supports this portion of

*Alexander*'s analysis.  It provides: "No appropriation bill shall be passed by the Legislature

which does not fix definitely the maximum sum thereby authorized to be drawn from the

treasury."  Miss. Const. art. 4, § 63.

¶18.     Second, *Alexander* found that the budget-control process "presents a different issue

9

in that it is an executive function." *Id*. at 1341. While the Court framed the budget-control

process as a "process" and a "function," it did recognize that budget control is an "executive

*power*." *Id*. at 1341 n.4 (emphasis added). The Court explained budget control:

> Once taxes have been levied and appropriations made, the legislative prerogative ends, and executive responsibility begins to administer the appropriation and to accomplish its purpose, subject, of course, to any limitations constitutionally imposed by the legislature. *See INS v. Chadha*, 462 U.S. 919, 103 S. Ct. 2764, 77 L. Ed. 2d 317 (1983). We have held above that the constitution does not permit the legislature to directly or indirectly invade the powers and prerogatives of the executive branch of government. The legislature thus may not administer an appropriation once it has been lawfully made and is prohibited from imposing new limitations, restrictions or conditions on the expenditure of such funds, short of full legislative approval.

*Id*. at 1341. Section 123 of Mississippi's Constitution supports *Alexander*'s analysis. The

section reads, "The Governor shall see that the laws are faithfully executed." Miss. Const.

art. 5, § 123.

¶19. Here, as the Executive's budget reductions were an exercise of the Executive's

constitutional power to control the budget, the Legislators have failed to meet their burden

to overcome the presumption that Section 27-104-13 is constitutional. Importantly, the

Executive's reductions did not affect the Legislative appropriations for any state agency.

Instead, the Executive exercised its power of budget control and adjusted the budgets of

various state agencies. In other words, the Executive's budget reductions did not violate the

doctrine of separation of powers, as the Executive exercised its own core power.[2]

---

[2] As already mentioned, the Legislators' separation-of-powers arguments on appeal miss the mark, as the budget reductions were an exercise of the Executive's core

¶20.    This distinction finds support in Section 63 of Mississippi's Constitution.  Section 63 provides that no appropriation bill will be passed that "does not fix definitely the *maximum* sum thereby authorized to be drawn from the treasury."  Miss. Const. art. 4, § 63 (emphasis added).  Thus, an appropriation is a definition of the maximum amount of funds available to a particular agency.  An appropriation is not a mandate that the agency must spend the maximum funds granted it.  On the contrary, it is an indication to the agency of the maximum sum of funds set aside to it for the fiscal year.  *See Appropriations*, Black's Law Dictionary (10th ed. 2014) ("3. A legislative body's . . . act of setting aside a sum of money for a specific purpose."); *Appropriations bill*, Black's Law Dictionary (10th ed. 2014) ("A bill that authorizes governmental expenditures.").

¶21.    The text of the appropriation bill at issue supports this conclusion as well.  It provides that "[t]he following sums, or so much of those sums as may be necessary, are appropriated . . . ."  H.B. 1643, 131st Leg., Reg. Sess. (Miss. 2016).  Given the wording of the appropriations bill, the Legislature understood that it was granting the Executive some discretion in the amount of money it actually spent.

¶22.    The Governor (as the head of the executive branch) must faithfully execute *all* laws passed by the Legislature.  The Constitution charges the Governor to "see that the laws are faithfully executed."  Miss. Const. art. 5, § 123.  In Mississippi, the Legislature has enacted measures to guide the Governor in fulfilling his duties.  Here, Section 27-104-13 is based on

constitutional power.

11

the requirement that the State operate on a balanced budget. *See* Miss. Code Ann. § 27-103-113 (Rev. 2017); Miss. Code Ann. § 27-103-139 (Rev. 2017). Thus, the Executive was within the sphere of its constitutional authority to control the agencies' budgets.

¶23. Further, Section 27-104-13 provides the Executive sufficient guidance to execute the appropriation faithfully—according to the will of the Legislature—even when faced with unexpected deficits. The Section determines when the Executive is authorized to adjust the budget of a state agency. It exempts certain agencies' budgets from reduction and limits the percentage amount that an agency's budget may be reduced. Further, Section 27-104-13 requires the Executive to report any reductions to the Legislative Budget Office.[3] Miss. Code Ann. § 27-104-13(2) (Rev. 2017).

¶24. The Governor's reference to appropriations when he instructed Jackson to reduce the various budgets is insufficient to overcome the strong presumption that Section 27-104-13 is constitutional. Specifically, on February 21, 2017, the Governor informed Jackson that he was "mandating additional cuts" in order "[t]o accomplish the $43 million in reductions *to FY 2017 appropriations . . . .*" (Emphasis added.) While this may have been poor wording on the part of the Governor to reference a reduction to appropriations as opposed to

---

[3]As the Legislators have failed to overcome the presumption that Section 27-104-13 is constitutional, we decline to analyze whether these restrictions placed by the Legislature on the executive branch are constitutional. Again, they are presumed to be so. *State v. Miss. Ass'n of Supervisors, Inc.*, 699 So. 2d 1221, 1223 (Miss. 1997) ("Statutes come before us clothed with a heavy presumption of constitutional validity."). Moreover, the Executive has not challenged these limitations.

reductions of the state agencies' budgets, no evidence was offered that the Executive believed that it was reducing the actual appropriations to the agencies. The statement by the Governor must be read in the context of the full letter to Jackson. The Governor carefully laid out his authority for the budget reductions in the full letter. In addition, no evidence was offered to demonstrate that the Governor intended to engage in budget making as opposed to budget control. Thus, the Governor's mention of "reductions to FY 2017 appropriations" as opposed to the reductions of the state agencies' budgets does not overcome the strong presumption in favor of the constitutionality of Section 27-104-13.

¶25. The Legislators have failed to overcome the strong presumption that Section 27-104-13 is constitutional. The Executive did not violate the separation-of-powers doctrine; it exercised its own core power to reduce the agencies' budgets.

## CONCLUSION

¶26. The Executive's budget reductions were a constitutional exercise of the Executive's power to control the budget. The Legislators failed to overcome the strong presumption that Section 27-104-13 is constitutional. Thus, we affirm the chancellor's order.

¶27. **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, MAXWELL, BEAM AND ISHEE, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED IN PART BY ISHEE, J.**

**COLEMAN, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶28. My disagreement with the majority seems small, but I think it reaches one of the most

13

fundamental principles embodied in our State's Constitution. In short, the plain language of Article 1, Section 2, of the Mississippi Constitution of 1890 suffers no illusion that only "core" powers are reserved to the respective branches that exercise them.

¶29. Section 2 reads as follows:

> No person or collection of persons, being one or belonging to one of these departments, shall exercise *any power* properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

Miss. Const. art. 1, § 2 (emphasis added). To the extent that the majority today, and the Court in *Alexander v. State*, 441 So. 2d 1329, 1338 (Miss. 1983), refers to powers of the executive (or any other) branch of government as "core" powers, they imply that there are noncore powers that can be shared between the branches of government. However, the above-quoted demarcation from Article 1, Section 2, of the Mississippi Constitution prohibits the branches from sharing "any power."

¶30. Accordingly, I concur with the majority except to the extent that its use of the word "core" understates the stark demarcation of powers as described by the use of the phrase "any power" in the text of our State's Constitution.

**ISHEE, J., JOINS THIS OPINION IN PART.**

14