CARLTON, J.,
for the Court.
¶ 1. On May 31, 2005, Carlos Miles was convicted by a jury in the Circuit Court of Forrest County for the crime of shooting into a dwelling house. Miles appeals to this Court and asserts that the trial court erred in refusing to grant a peremptory instruction, and in overruling his motion for directed verdict and motion for judgment notwithstanding the verdict (JNOV) and/or new trial. Finding no error, we affirm.
FACTS
¶ 2. The incident in this ease arose out of a relationship between Miles and Carrissa Martin. The two were involved in a short-lived intimate relationship which ultimately came to an end during the first week of July 2004. On the evening of July 9, 2004, Martin had four female guests spend the night at her home in Hattiesburg. During the early morning hours of July 10, 2004, at approximately 4:30 a.m., Miles, after a night on the town, arrived at Martin’s residence and began loudly knocking at the front door. Martin and her guests awoke to Miles’ beating on the door, yelling, and cursing to be let in. Martin refused to answer the door and Miles proceeded to the side, kitchen door of the house, whereupon, he began kicking the door and demanding to be let in the house. Miles then returned to the front door of the home and beat on the door so hard as to cause the blinds to fall off the window. Miles looked through the window and saw Martin and the other women. At this point, Martin replaced the blinds and Miles became angry, pulled out a pistol, fired one or more shots, and ran.
*350 ¶ 3. The police were called and, upon their arrival, Martin informed them of the events that had recently transpired. Martin stated that she was about to go outside and talk to Miles when she heard four shots. She further stated that one shot came through a window of her house, identified by Martin as the window left of the front door as if viewing the home from the outside facing the front of the house. The police were unable to find any shell casings or broken glass; however, Martin directed the police to the hole in the window. Detective Trey Rudder traced the path of the bullet through the window, through one interior wall, and into a bedroom, where it came to rest deeply embedded in the wall. The projectile was never recovered from the wall.
¶ 4. Miles was apprehended by the police at his mother’s apartment at approximately 5:00 a.m. where he was found in a back bedroom hiding under bed sheets. Miles subsequently gave a written statement to Detective Rudder in which he admitted that he went to Martin’s house on the night in question. Miles admitted in his statement that he saw Martin with another woman, became angry, and fired a weapon. However, he claimed that he fired the gun into the air rather than into the house.
¶ 5. On May 31, 2005, Miles was convicted by jury trial in the Forrest County Circuit Court of the crime of shooting into a dwelling in violation of Mississippi Code Annotated section 97-37-29 (Rev.2000). He was sentenced to serve a term of ten years in the custody of the Mississippi Department of Corrections. Aggrieved by the trial court’s decision, Miles appeals.
DISCUSSION
■ ¶ 6. “[A] motion for J.N.O.V., peremptory instruction, and directed verdict all challenge the legal sufficiency of the evidence.” Shumpert v. State, 935 So.2d 962, 966(8) (Miss.2006) (citation omitted). “When reviewing the sufficiency of the evidence, this Court must ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (citation omitted).
¶ 7. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005) (citation omitted). We sit as a thirteenth juror, viewing the evidence in the light most favorable to the verdict. Id.
¶ 8. Miles argues that the trial court erred in refusing to grant a peremptory instruction and in denying his motions for a directed verdict and JNOV and/or new trial. He claims that there was insufficient evidence to support his conviction for shooting into a dwelling house. In support of his argument, Miles points out that no witnesses actually saw Miles point the gun at the house and fire a projectile into it. He argues that Martin, Detective Rudder, and Verrienia Brent, one of Martin’s overnight guests on the night in question, all testified that they did not see Miles point the gun at the house when he fired it. Additionally, Miles argues that no shell casings were found at the scene and that no bullet was recovered from the walls of Martin’s home to prove that the projectile could be attributed to Miles’ gun. In essence, Miles contends that there was insufficient evidence from which the jury could infer that a projectile fired from his weapon actually struck and entered the home of Martin on the night in question.
¶ 9. We find that the evidence strongly indicates that a projectile fired by Miles on *351 the night in question, entered the dwelling house of Martin. The State charged and was required to prove that Miles did “willfully and unlawfully shoot or discharge [a firearm] into any dwelling house.... ” Miss.Code Ann. § 97-37-29 (Rev.2006). Miles’ statement establishes that he was present at Martin’s home and that he fired at least one bullet from a weapon while standing at or near the front door of the house. Martin and Brent, both testified that they immediately recognized Miles’ voice when he began yelling. Both women also stated that, when the blinds fell off the window, they clearly saw Miles from a close distance and observed that he was alone. Martin and Brent further testified that just prior to the shooting, Miles shouted that he “was going to shoot every [person] in the house.” (explicit language omitted).
¶ 10. Martin testified that she heard four shots and that “one came straight through [her] window and went through [her] walls.” Martin also testified that the holes in her home were not present prior to the shooting. Brent testified that she had been at Martin’s house all day before the shooting occurred and that there were no holes in the window or the walls of the house before the gunshots were fired.
¶ 11. After considering the evidence in the light most favorable to the verdict, giving the prosecution the benefit of all favorable inferences that may reasonably be drawn therefrom, we find that there is sufficient evidence to support the jury’s verdict of guilty. We find that the verdict rendered is not against the overwhelming weight of the evidence and that allowing it to stand will not sanction an unconscionable injustice. Accordingly, we affirm.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF SHOOTING INTO A DWELLING AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A $1,000 FINE AND A $100 ASSESSMENT TO THE MISSISSIPPI CRIME VICTIM’S COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.