# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00572-COA

JAMES WESLEY SCOTT A/K/A JAMES W. SCOTT A/K/A JAMES SCOTT
                                                        **APPELLANT**

v.

STATE OF MISSISSIPPI                                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/2014 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, ATTEMPTED RAPE, AND SENTENCED AS A HABITUAL OFFENDER TO LIFE WITHOUT THE POSSIBILITY OF PAROLE; COUNT II, KIDNAPPING, AND SENTENCED AS A HABITUAL OFFENDER TO LIFE WITHOUT THE POSSIBILITY OF PAROLE; AND COUNT III, BURGLARY OF A DWELLING, AND SENTENCED AS A HABITUAL OFFENDER TO LIFE WITHOUT THE POSSIBILITY OF PAROLE, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED: 06/21/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT**:

¶1.     This appeal arises from James Wesley Scott's convictions of attempted rape, kidnapping, and burglary of a dwelling and three consecutive life sentences as a habitual offender. This Court finds no error and affirms.

FACTS

¶2.     On July 3, 2009, Scott broke into the home of Danielle Landry in Hattiesburg, Mississippi. Scott entered the home, grabbed Landry, and dragged her from the living room toward the bedroom. Landry believed Scott intended to rape her, and she offered money to Scott in exchange for her release. Scott momentarily released Landry, and she attempted to escape through a window. Scott then dragged Landry back to the kitchen, looked through her purse, and found five dollars.

¶3.     Landry then urged Scott to take her to an ATM in order to pay him more money. Scott took Landry to her car, forced her into the passenger seat, and drove from the house. At one point, Scott slowed the car and Landry opened to the door to flee. Scott held onto Landry while she struggled then eventually freed herself. Landry ran to a neighbor's house for help as Scott drove away. Police later recovered Landry's car.

PROCEDURAL HISTORY

¶4.     Scott alleges that the police issued an arrest warrant on July 3, 2009, and he turned himself in to police in October or November 2009. The Mississippi Department of Corrections (MDOC) revoked an unserved sentence from a previous conviction, and Scott remained in prison until February 6, 2011.

¶5.     On September 26, 2011, a Forrest County grand jury indicted Scott for attempted rape, kidnapping, and burglary of a dwelling stemming from the July 3, 2009 incident.  On March 14, 2012, Scott was arraigned.  Scott then filed a motion for recusal of the trial judge on April 12, 2012.  No ruling occurred on that motion, but on September 6, 2012, the trial judge recused on his own motion.  On September 20, 2012, the Mississippi Supreme Court appointed a special judge.

¶6.     No further action in this case appears in the record until March 24, 2014, when Scott filed a pro se motion to dismiss the case based on speedy-trial violations.  Scott filed a similar motion on May 2, 2014, and his appointed counsel filed a third motion to dismiss on August 14, 2014.  The trial court denied the third motion and conducted the trial on August 18 and 19, 2014.  The jury returned a guilty verdict on all three counts.  Scott filed several posttrial motions, which the trial court also denied.  Scott now appeals.

## ANALYSIS

¶7.     Scott asserts the following issues on appeal:

I.      The trial court violated Scott's right to fully present a defense by prohibiting the testimony of defense witness John Barnes;

II.     The trial court failed to instruct the jury on the essential elements of each crime under counts I and III;

III.    The trial court erred in giving instruction S-11A;

IV.     The trial court erred by denying Scott's request for a continuance and allowing untimely disclosed DNA evidence;

V.      The evidence was insufficient to support the verdict; alternatively, the verdict was against the overwhelming weight of the evidence; and

3

VI. The trial court erred in denying Scott's motions to dismiss for violation of his right to a speedy trial.

Scott also submitted a supplemental appellant's brief, which asserted the following issues:

VII. The State knowingly proffered perjured testimony;

VIII. The State suppressed evidence;

IX. Scott was denied the right to confront the witnesses against him; and

X. Scott reasserted that the trial court erred by failing to dismiss the case due to violations of his right to a speedy trial.

We combine the two speedy-trial arguments and Scott's supplemental issues for clarity.

I. *The trial court did not violate Scott's right to fully present his defense when it limited the testimony of John Barnes.*

¶8. As his first error, Scott contends the trial court improperly excluded parts of Barnes's testimony. Scott argues that the trial court's exclusions prevented him from presenting his version of events and impeded his defense. The State counters that the trial court properly excluded Barnes's testimony under the applicable rules of evidence.

¶9. "The standard of review applied to a circuit judge's admission or exclusion of evidence and testimony is abuse of discretion." *Carpenter v. State*, 132 So. 3d 1053, 1055 (¶5) (Miss. Ct. App. 2013). Scott attempted to elicit testimony about Barnes previously smoking marijuana with Landry and an occasion when Barnes witnessed Landry and Scott smoking marijuana together a few weeks prior to the incident. We address these occurrences separately.

A. *Barnes smoked marijuana with Landry.*

¶10. Scott first attempted to elicit testimony that Barnes and Landry smoked marijuana

4

together. Scott argued below, and maintains on appeal, that Landry's prior drug use went to his theory of the crime. Scott stated he went to Landry's home with the intent to recover money she owed him for drugs, not because he intended to rape her. The State objected that the testimony was irrelevant, and the trial court sustained the objection.

¶11. Scott argues the evidence about Landry's prior drug use was crucial to his version of events. As such, Scott contends the trial court's exclusion of Barnes's testimony deprived him of his right to fully present his defense. "A criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant's defense where there is testimony to support the theory." *Clark v. State*, 40 So. 3d 531, 542 (¶30) (Miss. 2010) (quoting *Terry v. State*, 718 So. 2d 1115, 1121 (Miss. 1998)). This right does not mean, however, that the trial court impermissibly curtailed Scott's defense.

¶12. While a defendant is entitled to present his defense, the right is not without its limitations, as "all evidence admitted in support of the defendant's theory of the case must comport with the Mississippi Rules of Evidence." *Id.* The trial court found Barnes's testimony that he and Landry previously smoked marijuana was irrelevant because whether Landry did drugs in the past did not relate to the incident unless Scott alleged Landry smoked marijuana on the night of the incident.

¶13. Mississippi Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402

dictates that "[a]ll relevant evidence is admissible" but "[e]vidence which is not relevant is not admissible." M.R.E. 402. Scott maintains that Landry's previous drug use made the charges of attempted rape less probable because he argued he went to Landry's home to recover drug money. Barnes's testimony, however, holds no relevance to Scott's charges.

¶14. Barnes's proffered testimony showed that at some indeterminate point prior to July 3, 2009, he and Landry smoked marijuana. But Barnes's testimony did not relate to any occurrences involving Scott, Landry, and the incident. Further, the testimony did not show that either Landry or Scott was involved in buying or selling drugs. This evidence, therefore, did not support Scott's theory that he fought with Landry over drug money.

¶15. Scott also argues that the trial judge improperly excluded the evidence under Mississippi Rule of Evidence 404(b) when he stated the testimony demonstrated that Landry was intoxicated on the night of the incident. Because we find the trial court properly excluded the evidence as irrelevant, this argument is moot. Thus, the trial court did not abuse its discretion.

### B. Landry told Barnes she smoked marijuana.

¶16. Scott also attempted to elicit testimony that Landry told Barnes she smoked marijuana with Scott. Outside the presence of the jury, Scott proffered Barnes's testimony that one night, several weeks before the July 3, 2009 incident, he saw Landry and Scott together in Scott's truck. Barnes stated he went up to them and asked them what they were doing. Barnes then stated that Landry told him that she and Scott were smoking marijuana.

¶17. The State objected on hearsay grounds. The trial court sustained the objection on

6

hearsay grounds and also stated that Barnes could not positively identify what Landry and Scott were smoking as marijuana. Scott asserts this exclusion was improper.

¶18. Mississippi Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 802 dictates that "[h]earsay is not admissible except as provided by law." M.R.E. 802. Scott argues that the statement was not hearsay, but if it was hearsay, the statement met several hearsay exceptions.

¶19. Scott first asserts that the statement was not hearsay because he did not offer the statement "to prove the truth of the matter asserted." This argument fails. Scott clearly sought to offer Barnes's testimony to establish that Landry smoked marijuana with Scott in order to prove he intended to break and enter into Landry's home to recover drug money and not to rape her. This statement bears on Scott's intent to commit the crimes charged. Therefore, Barnes's testimony of Landry's statement is hearsay.

¶20. Finding that the statement constituted hearsay, we turn to the hearsay exceptions. Scott argues that the statement met the present-sense-impression exception to hearsay. Rule 803(1) defines present sense impression as: "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." M.R.E. 803(1). Scott argues Landry's statement occurred immediately after the event, which makes the statement admissible under Rule 803(1).

¶21. However, "[t]he present sense impression rule requires a spontaneous statement, not one in response to a question." *Edwards v. State*, 736 So. 2d 475, 478 (¶11) (Miss. Ct. App.

7

1999). In his proffer, Barnes stated that he asked Landry and Scott what they were doing, to which Landry replied they were smoking marijuana. Landry made the statement in response to Barnes's question. Thus, the present-sense-impression exception does not apply.

¶22. As another exception, Scott contends that the statement was admissible to explain a coherent story of the incident. Scott relies on *Garrett v. State*, 956 So. 2d 229, 232-33 (¶10) (Miss. Ct. App. 2006), for the proposition that where it is "necessary to present to the jury 'the complete story of the crime,' evidence or testimony may be given though it may reveal or suggest other crimes." *Id.* (quoting *Brown v. State*, 483 So. 2d 328, 330 (Miss. 1986)).

¶23. In *Garrett*, the trial court allowed Robert Smith to testify as to the reason the victim broke up with Garrett and to explain why Smith was with the victim during the attack. *Id.* This Court affirmed the trial court's allowance of hearsay testimony to establish a sequence of events leading up to the assault. *Id.* Unlike *Garrett*, however, Scott offered no other evidence aside from Barnes's testimony that indicated he went to Landry's house for drug money. Further, Landry's declaration to Barnes did not establish or clarify the sequence of events on July 3, 2009. Accordingly, *Garrett* did not apply, and the statement remained inadmissible.

¶24. Scott also sought to admit the statement to establish that he and Landry knew each other better than Landry admitted. The trial court allowed Barnes to testify that he saw Landry with Scott in his truck several weeks before the incident. Therefore, the trial court did not improperly curtail his defense as to this contention.

¶25. Scott further asserts that the hearsay statement was admissible to impeach Landry

8

under Mississippi Rule of Evidence 613 as a prior inconsistent statement. "Under Rule 613(b), a prior statement of a witness must be inconsistent with trial testimony to be admissible." *Long v. State*, 934 So. 2d 313, 315 (¶8) (Miss. Ct. App. 2006) (citation omitted). "Hearsay testimony of a prior inconsistent statement under . . . Rule 613(b) is admissible into evidence only if a foundation is laid in which the witness is given an opportunity to explain or deny the statement." *Id.* (citing *Flowers v. State*, 842 So. 2d 531, 551 (¶54) (Miss. 2003)).

¶26.    On cross-examination, Scott asked Landry if she did drugs around the time of the incident. Landry stated she did not. Scott further asked: "So any witness who would say that he has observed you and Mr. Scott in a car smoking weed together would be lying?" To which Landry responded: "Yes." Landry's statements appear inconsistent with her alleged previous statement to Barnes that she and Scott smoked weed. Inconsistency alone, however, is not sufficient for impeachment under Rule 613(b).

¶27.    In order to impeach a witness, "before the prior statement can come in, counsel must lay the proper foundation." *Al-Fatah v. State*, 916 So. 2d 584, 591 (¶21) (Miss. Ct. App. 2005) (citing *Hall v. State*, 691 So. 2d 415, 420 (Miss. 1997)). "The attorney must set the scene for the victim, asking whether on a particular day, in the presence of particular witnesses, the victim made a particular statement." *Id.*

¶28.    In *Al-Fatah*, the defense sought to introduce evidence that the victim told a third party that he made up the charges against the defendant. *Id.* at (¶23). However, when the victim took the stand, the defense only asked general questions about whether he and the third party

9

spoke about the crime. *Id.* at 592 (¶25). Based on this line of questioning, this Court upheld the trial court's decision to prohibit the defense from impeaching the victim through his prior inconsistent statement when the victim was not afforded the opportunity to admit or deny the specific statement. *Id.* This case resembles *Al-Fatah*.

¶29. Here, Scott asked Landry general questions about her prior drug use. Further, Scott only asked Landry if any witness who saw her and Scott smoking marijuana in a car together would be incorrect. Scott, however, knew the identity of the witness, the approximate time he observed Scott and Landry, and the specific interactions between Landry, Scott, and Barnes that led to the inconsistent statement. Scott, however, did not use these specific details to lay a proper predicate for impeachment. The trial court did not state a reason for denying the testimony for impeachment purposes other than the fact that Barnes could not identify the substance as marijuana. Regardless, we find the trial court properly excluded the testimony because Scott failed to lay a proper foundation to impeach Landry with her prior inconsistent statement.

¶30. Scott failed to prove the relevance of Barnes's testimony regarding the occasion he smoked marijuana with Landry. Further, Scott did not establish that Landry's hearsay statement to Barnes fell within any hearsay exception. For these reasons, we find the trial court did not abuse its discretion in limiting Barnes's testimony.

> II. *The trial court properly instructed the jury on the essential elements of each crime in count I and count III.*

¶31. Secondly, Scott asserts that the trial court failed to include the essential elements of each crime in count I and count III in jury instructions S-1 and S-6, respectively. This

omission, according to Scott, resulted in error. The State responds that the instructions were sufficient.

¶32.    The Mississippi Supreme Court has held that an opposing party must state a contemporaneous objection in specific terms to a jury instruction to preserve that point for appeal. *Young v. Robinson*, 538 So. 2d 781, 783 (Miss. 1989). Here, Scott did not contemporaneously object to either S-1 or S-6 to preserve this issue for appeal.

¶33.    However, Scott urges this Court to consider the instructions under the plain-error doctrine. *See Williams v. State*, 61 So. 3d 981, 983 (¶11) (Miss Ct. App. 2011) (failure to object procedurally bars issue on appeal unless trial court committed plain error). In the plain-error analysis, "[o]nly an error so fundamental that it creates a miscarriage of justice rises to the level of plain error." *Willis v. State*, 999 So. 2d 411, 414 (¶9) (Miss. Ct. App. 2008). "Plain error occurs where the substantive rights of a defendant are violated." *Id.*

¶34.    When considering whether jury instructions created a manifest injustice, "instructions are to be read together and taken as a whole with no one instruction taken out of context." *Johnson v. State*, 19 So. 3d 145, 147 (¶10) (Miss. Ct. App. 2009) (quoting *Poole v. State*, 826 So. 2d 1222, 1230 (¶27) (Miss. 2002)). Viewing the jury instructions as a whole, "this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether the error has prejudiced the outcome of the trial." *Cox v. State*, 793 So. 2d 591, 597 (¶22) (Miss. 2001). Further, "[i]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Taylor v. State*, 763 So. 2d 913, 915 (¶8) (Miss. Ct. App. 2000).

11

### A.    Instruction S-1

¶35.    We first look at jury instruction S-1.  Instruction S-1 stated, in-part:

If you find from the evidence in this case beyond a reasonable doubt that:

1)    The Defendant, JAMES WESLEY SCOTT, on or about July 3, 2009, in Forrest County, Mississippi;

2)    intended to commit the crime of [r]ape;

3)    by committing the overt acts of throwing Danielle Landry on the bed and trying to tear her clothes off of her, direct ineffectual actions beyond mere preparation or planning that went toward the commission of the crime; but,

4)    The Defendant, JAMES WESLEY SCOTT, failed to actually consummate the crime, or was prevented from consummating the crime, and therefore[,] did not meet the elements of [r]ape, of the contemplated crime;

then you shall find the Defendant, JAMES WESLEY SCOTT, guilty of [a]ttempted [r]ape[.]

Scott argues this instruction failed to inform the jury of the specific crime of rape.

¶36.    Mississippi Code Annotated section 97-3-65(4)(a) (Rev. 2014) defines rape as "forcible sexual intercourse."  According to Scott, the omission of the definition of or a reference to "forcible sexual intercourse" rendered the instruction incomplete.  Scott, however, was not indicted or convicted of rape.

¶37.    Instead, Scott was indicted and convicted for attempted rape.  The supreme court has held that "[a] person is guilty of an attempt within the meaning of [Mississippi Code Annotated section] 97-1-7 [(Rev. 2014)] if he 'shall design and endeavor to commit an offense [(rape)], and shall do any overt act toward the commission thereof, but shall fail

12

therein, or shall be prevented from committing the same[.]'" *Harden v. State*, 465 So. 2d 321, 323 (Miss. 1985). The *Harden* court concluded that these were the essential elements for an attempted-rape indictment. *Id.*

¶38. Likewise, a proper jury instruction on attempt requires the "three elements stated in the statute of (1) a design or endeavor to commit an offense, (2) an overt act toward commission thereof, and (3) a failure to consummate the act." *Henderson v. State*, 660 So. 2d 220, 223 (Miss. 1995). In *Henderson*, the supreme court reversed an attempted-rape conviction when the jury instruction omitted that the defendant failed to consummate the act in defining the elements of attempted capital rape. *Id.* at 222.

¶39. The supreme court later clarified that "*Henderson* merely requires that the jury be instructed to find, pursuant to the language of the statute, that the defendant failed to complete the intended act or was prevented from doing so." *Armstead v. State*, 716 So. 2d 576, 583 (¶29) (Miss. 1998). The supreme court also reversed the conviction in *Armstead* due to the omission of the failure-to-consummate language in the jury instruction. *Id.*

¶40. Neither *Harden*, *Henderson*, nor *Armstead* required that the elements of attempted rape include the definition of rape, specifically forcible sexual intercourse. Instruction S-1 included the intent to commit the offense of rape, stated the overt acts toward the commission of rape, and dictated that Scott was prevented from consummating the crime of rape. Thus, the instruction properly recited the law on attempted rape. Additionally, instruction S-2 defined attempt. For these reasons, the trial court did not commit plain error when it gave instruction S-1.

### B. Instruction S-6

¶41. In addition to the attempted-rape instruction, Scott also contends the instruction for burglary of a dwelling constituted an improper instruction on the elements of the crime. Instruction S-6 stated:

> The Defendant, JAMES WESLEY SCOTT, has been charged with the crime of [b]urglary of a [d]welling.
>
> If you find from the evidence in this case[,] beyond a reasonable doubt, that:
>
> 1)    The Defendant, JAMES WESLEY SCOTT, in Forrest County, Mississippi, on or about July 3, 2009;
>
> 2)    Did unlawfully break and enter the dwelling house of Danielle Landry[,] located at 305 N. 20th Avenue, Hattiesburg, Mississippi;
>
> 3)    With the intent to commit the crime of [r]ape once inside;
>
> then you shall find the Defendant, JAMES WESLEY SCOTT, guilty of [b]urglary of a [d]welling.
>
> If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant, JAMES WESLEY SCOTT, not guilty of [b]urglary of a [d]welling.

Scott makes a similar argument that S-6 did not include the forcible-sexual-intercourse language contained in the specific elements of rape.

¶42. "This Court has held that jury instructions on burglary must identify the crime the defendant intended to commit." *Conner v. State*, 138 So. 3d 143, 149 (¶14) (Miss. 2014) (citing *Daniels v. State*, 107 So. 3d 961, 964 (¶17) (Miss. 2013)). In *Conner*, the jury instruction stated the elements of burglary and listed larceny as the underlying crime. *Id.* at (¶12). The *Conner* court concluded that "Conner's jury instructions complied with *Daniels*

14

by identifying larceny as the crime he intended to commit[,]" and upheld the instruction. *Id.* at 149-50 (¶¶15-16). The instruction in *Conner* is analogous to instruction S-6.

¶43. Here, instruction S-6 stated that Scott unlawfully broke and entered into Landry's dwelling with the intent to commit rape. This instruction satisfies the requirement under *Daniels* to include the specific underlying crime. The supreme court in *Daniels* reversed the conviction because the jury instruction did not state the specific crime of larceny that Daniels intended to commit when he broke and entered into another's dwelling. *Daniels*, 107 So. 3d at 964 (¶17). *Daniels* did not stand for the proposition that a valid jury instruction for burglary also required a statement of the elements of the specific underlying crime. Because the trial court did not err when it gave jury instructions S-1 and S-6, the plain-error doctrine does not apply. This issue is meritless.

### III.     The trial court properly gave instruction S-11A.

¶44. Scott next argues the trial court erroneously instructed the jury when it gave instruction S-11A on the elements of kidnapping. Scott contends the instruction improperly weighed the evidence needed to support a guilty verdict on the kidnapping charge. In contrast, the State argues the instruction accurately stated the law on kidnapping and did not constitute a comment on the evidence by the trial court.

¶45. Unlike the prior jury-instruction issue, Scott contemporaneously objected to this instruction at trial. As such, the plain-error analysis does not apply. Instead, "[i]n determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly

15

announce the law of the case and create no injustice, no reversible error will be found."

*Hancock v. State*, 964 So. 2d 1167, 1172 (¶11) (Miss. Ct. App. 2007) (citation omitted).

¶46.    Jury instruction S-11A stated: "The Court instructs the [j]ury that confinement and asportation (which means the moving of a victim against their [sic] will), are sufficient to support [k]idnapping without regard to the distance moved, however slight, or time of confinement, no matter how short." Scott argues the instruction that the slight-movement requirement for asportation and the short-time requirement for confinement were "sufficient to support" the charge of kidnapping impermissibly commented on the weight of the evidence.

¶47.    "Generally, the trial court should not comment on specific evidence, or the weight of said evidence, in the instructions given to the jury." *Hancock*, 964 So. 2d at 1172 (¶12) (citing Miss. Code Ann. § 99-17-35 (Rev. 2015)). "Additionally, it is well settled that 'an instruction which is on the weight of the evidence or which singles out and gives undue prominence to certain portions of the evidence is erroneous.'" *Id.* (quoting *Bester v. State*, 212 Miss. 641, 647, 55 So. 2d 379, 381 (1951)).

¶48.    Scott contends the State erroneously relied on *Cuevas v. State*, 338 So. 2d 1236, 1238 (Miss. 1976), to support the validity of the instruction. *Cuevas* states in-part: "[I]f the confinement or asportation be not merely incidental to a lesser crime, but a constituent part of the greater crime, the fact of confinement or asportation is sufficient to support kidnapping without regard to distance moved or time of confinement." *Id.* Scott argues *Cuevas* does not support the jury instruction's statement that confinement and asportation, regardless of the

16

extent of either, is sufficient to support a kidnapping charge. Instead, Scott contends that *Cuevas* stands for the proposition that confinement and asportation that are merely incidental to another crime are insufficient to support a separate kidnapping charge. Scott is partially correct.

¶49. This Court declared that "[a]s stated in *Cuevas*, the distance of asportation is not important, but rather the fact of asportation as it relates to the unlawful activity." *Salter v. State*, 876 So. 2d 412, 415 (¶8) (Miss. Ct. App. 2003). Therefore, *Cuevas* appears to hold that the distance of asportation did not matter in a kidnapping charge, as well as that the asportation could not merely occur incidentally to another crime. Instruction S-11A, therefore, is not an improper recitation of the law.

¶50. "Confinement of the victim against his or her will is an essential element of the crime of kidnapping." 3 Jeffrey Jackson et al., *Encyclopedia of Mississippi Law* § 23:81 (2016). Citing to *Cuevas*, the supreme court in *Williams v. State*, 544 So. 2d 782, 790 (Miss. 1987), held that "[t]he fact that the confinement is minor is of no consequence so long as it is present." *Id.* (citing *Cuevas*, 338 So. 2d at 1238). Further, while asportation is not a necessary element of the crime of kidnapping, jury instruction S-4A properly stated the necessary elements of kidnapping. Therefore, looking to the jury instructions as a whole, the trial court did not err by giving instruction S-11A.

> IV.     *The trial court did not err when it overruled Scott's request for a continuance and allowed the State to present DNA evidence.*

¶51. As a further contention, Scott states the trial court committed error when it denied his request for a continuance and allowed the State to present DNA evidence from an untimely

17

disclosed DNA report. The State argues that Scott caused the delay in part, he knew of the evidence before the report, and the DNA evidence was cumulative.

¶52. "The standard of review of a trial court's admission of evidence is abuse of discretion." *Moore v. State*, 911 So. 2d 1037, 1038 (¶3) (Miss. Ct. App. 2005) (citation omitted). "The trial judge is empowered with the discretion to consider and to decide what evidence is admissible, and unless this judicial discretion is so abused as to be prejudicial to the accused, then the ruling of the lower court must be affirmed." *Id.* (quoting *Francis v. State*, 791 So. 2d 904, 907 (¶7) (Miss. Ct. App. 2001)). Further, [t]he standard of review to grant or deny a motion for continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice." *Foxworth v. State*, 96 So. 3d 17, 21 (¶15) (Miss. Ct. App. 2011) (citing *Payton v. State*, 897 So. 2d 921, 931 (¶11) (Miss. 2003)).

¶53. Scott argues that Uniform Rule of Circuit and County Court 9.04 required the State to timely supplement discovery and provide disclosures in a timely manner. Scott stated he received the DNA analysis report the night before trial and received the locations of the blood stains in the house on the day of trial. The State, however, did not receive the final DNA report until the day before trial as well. Further, Scott knew the State sought the DNA evidence as early as June 19, 2014, when the State filed a motion to compel to obtain Scott's DNA for a laboratory to compare his sample to the blood samples obtained from Landry's home. Thus, it does not appear the State violated Rule 9.04.

¶54. Even if the State did violate Rule 9.04, the error was harmless. "When Rule 9.04 is

18

violated, the error is considered harmless 'unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice.'" *Matthews v. City of Madison*, 143 So. 3d 579, 585 (¶25) (Miss. Ct. App. 2013) (quoting *Payton*, 897 So. 2d at 942 (¶67)). The DNA analysis report only showed that blood found at Landry's home matched Landry and Scott. In addition to the report, police found Scott's wallet, with his identification and Social Security card, at the home. Scott argues the failure of the State to clearly demonstrate the locations of the blood stains that were tested constituted prejudice. But Scott fails to show how the locations of the blood stains caused a miscarriage of justice necessitating reversal. Therefore, the trial court did not abuse its discretion, and this issue is without merit.

> V. *The evidence was sufficient to support the convictions and the verdict was not against the overwhelming weight of the evidence.*

¶55. Scott further argues that the trial court erroneously denied his motion for a judgment notwithstanding the verdict (JNOV) because the evidence was insufficient to support the convictions on all counts. Scott also contends the trial court erred in denying his motion for a new trial because the jury verdict was against the overwhelming weight of the evidence. We address each of these contentions separately.

> A. *Sufficiency of the Evidence*

¶56. We first analyze the sufficiency of the evidence. "The standard of review for a post-trial motion is abuse of discretion." *Dilworth v. State*, 909 So. 2d 731, 736 (¶17) (Miss. 2005). "In a motion for a JNOV, the sufficiency of the evidence is challenged." *Jenkins v. State*, 101 So. 3d 161, 165 (¶12) (Miss. Ct. App. 2012) (citation omitted). "When reviewing the sufficiency of the evidence, this Court must ask whether, after viewing the evidence in

19

the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Miles v. State*, 956 So. 2d 349, 350 (¶6) (Miss. Ct. App. 2007) (quoting *Shumpert v. State*, 935 So. 2d 962, 966 (¶8) (Miss. 2006)).

¶57.   The supreme court has stated:

> If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty, granting the peremptory instruction or [JNOV] is required.  On the other hand, if there is substantial evidence opposed to the request or motion – that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair minded [jurors] in the exercise of impartial judgment might reach different conclusions – the request or motion should be denied.

*Gavin v. State*, 473 So. 2d 952, 956 (Miss. 1985).  Therefore, we must determine whether the State proved, beyond a reasonable doubt, that the crimes of burglary of a dwelling, kidnapping, and attempted rape occurred.

¶58.   "[T]he elements of burglary of a dwelling are: (1) the unlawful breaking and entering of a dwelling; and (2) the intent to commit some crime when entry is attained." *Cavitt v. State*, 159 So. 3d 1199, 1202 (¶10) (Miss. Ct. App. 2015) (internal quotations and citation omitted). To prove these elements, "the State need only show the defendant's intent to commit a burglary plus a slight act toward its commission." *Edgett v. State*, 43 So. 3d 541, 544 (¶7) (Miss. Ct. App. 2010) (citing *Ford v. State*, 218 So. 2d 731, 732 (Miss. 1969)).  The State sufficiently proved the elements of this count.

¶59.   The evidence showed that Scott unlawfully entered Landry's home when he broke through the kitchen-door window and entered the home.  Officer Holmes and Investigator

20

Jeff Byrd testified that they saw the glass in the kitchen door broken, glass in the kitchen, and glass on the outside of the door. Further, Landry testified that she was sleeping on her living-room couch when she heard glass breaking and saw Scott enter through the kitchen door. This evidence illustrates that Scott unlawfully entered Landry's home.

¶60. The second element of burglary of a dwelling and the attempted-rape charge have overlapping evidence. As part of the burglary charge, the indictment charged the underlying crime of rape. To satisfy the burglary element, the evidence must show that Scott made an act toward its commission. Landry testified that Scott came toward her, grabbed her, and dragged her down the hallway toward her bedroom. Landry further stated that Scott ripped at her clothing, made sexually explicit statements, and grabbed all over her. Photographic evidence also indicated that a blood trail connected the living room to the bedroom. As such, the evidence is sufficient to show beyond a reasonable doubt that Scott completed the crime of burglary of a dwelling with the intent to commit rape.

¶61. The evidence showing Scott's intent to rape Landry also satisfies some of the elements for attempted rape. Attempted rape requires a showing that Scott "designed and endeavored to rape [Landry], that he did an overt act toward the commission thereof, and either that he failed therein or was prevented from committing the crime." *Harden*, 465 So. 2d at 323. The evidence establishing the second element of burglary also supports the first two elements of attempted rape. Scott's dragging Landry to the bedroom, tearing her clothing, and saying sexually explicit statements demonstrates his intent and constitutes an overt act toward the act of rape. Additionally, Scott only ended his attempt to rape Landry when she told him she

21

would give him money to leave her alone. While Scott contends this does not illustrate that he was prevented from committing the rape, this evidence is sufficient to support his conviction of attempted rape.

¶62. Lastly, the State was required to prove all the elements of kidnapping. A person is guilty of kidnapping if he unlawfully forcibly seizes and confines another person. *See Holly v. State*, 671 So. 2d 32, 43 (Miss. 1996). Landry testified that Scott forced her into her vehicle and drove the car while trying to restrain her. When the car slowed down, Landry testified that she jumped from the car, but Scott held on to her for a period of time until she freed herself. Kristopher Molley witnessed Landry get into the car and then jump from the car. This confinement in Landry's vehicle, coupled with Scott's restraint of Landry, satisfied the elements of kidnapping such that a jury could reasonably conclude Scott kidnapped Landry.

¶63. In viewing the evidence in the light most favorable to the State, the evidence was sufficient to prove every element of each of the crimes charged beyond a reasonable doubt. Therefore, this issue is without merit.

### B. Weight of the Evidence

¶64. Additionally, Scott challenges the trial court's denial of his motion for a new trial. "This Court reviews a trial court's denial of a motion for a new trial based on an abuse-of-discretion standard." *Mitchum v. State*, 164 So. 3d 477, 482 (¶19) (Miss. Ct. App. 2014) (citing *Butler v. State*, 102 So. 3d 260, 268 (¶23) (Miss. 2012)). When we review "a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only

disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005) (citation omitted). With this standard in mind, we must weigh the evidence in the light most favorable to the verdict. *Id.*

¶65. As previously discussed, the evidence demonstrated that Scott committed the crimes of burglary, kidnapping, and attempted rape. The evidence showed that Scott unlawfully entered Landry's home, dragged her to her bedroom while making sexual comments, and tore at her clothing. Further, Scott ceased his attempt to rape Landry in order to obtain money from her. He forced Landry into her car, drove off, and attempted to prevent Landry from leaving the car. The testimonies of Landry, Molley, Officer Holmes, and Investigator Byrd corroborate this evidence.

¶66. As such, we cannot conclude that the verdict was contrary to the overwhelming weight of the evidence. Therefore, the trial court's denial of Scott's motion for a new trial was not an abuse of discretion. This issue is without merit.

> VI. *The trial court properly denied Scott's motions to dismiss for violations of his right to a speedy trial.*

¶67. As an additional issue, Scott asserts the delays between his arrest, indictment, and trial violated his statutory and constitutional rights to a speedy trial. We address each assertion separately.

> A. *Statutory Right*

¶68. As part of his pro se supplemental brief, Scott asserts that his statutory right to a speedy trial was violated. Mississippi Code Annotated section 99-17-1 (Rev. 2015) states:

"Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."

¶69.   To determine a statutory violation, "[t]he first step is to calculate the total number of days between arraignment (the statute clearly states that is when the right attaches) and the actual trial." *Sharp v. State*, 786 So. 2d 372, 378 (¶5) (Miss. 2001).  Scott's arraignment occurred on March 14, 2012, and his trial commenced on August 19, 2014.  This time span of 889 days exceeds the 270-day statutory requirement.  However, the inquiry does not end at this point.

¶70.   "[T]he second step in determining whether the 270-day rule has been complied with is to consider each delay separately, because only those delays attributable to the State count toward the 270 days." *Id.*  Thus, we look to each delay between the arraignment and trial and the party responsible for each delay.

¶71.   The first delay occurred when thirty days elapsed between the arraignment and Scott's motion for recusal of the trial judge.  This delay is likely attributable to Scott.  After arraignment, Scott did not obtain counsel until April 11, 2012.  He then filed the motion for recusal on April 12, 2012.  Therefore, this delay does not weigh against the State.

¶72.   Another delay occurred from the April 12, 2012 motion for recusal, to the September 6, 2012 order of recusal, until September 20, 2012, when the supreme court appointed a new trial judge.  This sequence of events resulted in a 163-day delay.  Yet this delay should not weigh against either party.  The supreme court has found that the reasons for delay such as

24

court-docket congestion, heavy caseload, incarceration on other charges, unheard motions, substitution of defense counsel, and unavailability of the trial judge are factors that should either weigh equally to the State and defendant or should slightly favor the State. *State v. Magnusen*, 646 So. 2d 1275, 1281 (Miss. 1994). Presumably, this delay regarding the trial judge's recusal and subsequent appointment of a special trial judge would fall into this category of neutral delays. Thus, this period does not weigh against either party.

¶73. However, the largest delay of 554 days is attributable to Scott. From September 20, 2012, to March 27, 2014, the delay occurred due to Scott's counsel's actions. At a status hearing on March 25, 2014, the trial court highlighted the problems caused by Scott's counsel, Rod Nixon. The trial court noted that Nixon repeatedly made assurances that either a guilty plea would be entered or he would work with the trial court to set a trial date. Later, on August 19, 2014, the trial court, addressing Scott's motion to dismiss, stated that "most of the delay falls on the shoulders of Mr. Rod Nixon, who was Mr. Scott's attorney for a good while." Accordingly, "[a] delay attributable to the defendant tolls the constitutional speedy trial clock." *DeLoach v. State*, 722 So. 2d 512, 517 (¶19) (Miss. 1998). This factor favors the State.

¶74. On March 27, 2014, the trial court appointed Scott new counsel. Around this time, trial was set for June 24, 2014. Then on June 19, 2014, Scott's counsel filed a motion to withdraw. Also on June 19, 2014, the State filed a motion for a continuance to obtain DNA samples from Scott and send the results to a lab for an analysis of Scott's DNA and blood samples from the crime scene. These reasons weigh equally against the State and Scott.

25

¶75.    Though the State's motion for a continuance weighs against the State, the motion sought to compel Scott to provide a DNA sample and to allow time for a DNA analysis. Time attributable to a crime lab only weighs slightly against the State. *See Taylor v. State*, 162 So. 3d 780, 785 (¶9) (Miss. 2015). Further, Scott's counsel requested to withdraw on the same day, which cannot weigh against the State. Lastly, the parties filed an agreed order on July 8, 2014, to move the trial date from August 13, 2014, to August 19, 2014, when the trial occurred. Because the reasons for the delay either slightly weighed against the State, weighed against Scott, or were neutral reasons, we do not find the State violated Scott's statutory right to a speedy trial.

### B.    Constitutional Right

¶76.    Additionally, Scott asserts the trial court erroneously denied his motions to dismiss due to the violations of his constitutional right to a speedy trial. The violations occurred, according to Scott, when the State failed to bring the case to trial nearly five years after the crime. The State counters that the majority of the delays were attributable to Scott and his counsel, which defeats a speedy-trial argument.

¶77.    Scott's assertions of constitutional violations of his right to a speedy trial implicate both the United States and Mississippi Constitutions. "The Sixth Amendment to the United States Constitution provides an accused the right to a 'speedy and public trial.' And the Mississippi Constitution establishes an almost identical protection." *Johnson v. State*, 68 So. 3d 1239, 1241 (¶6) (Miss. 2011) (citing U.S. Const. amend. VI; Miss. Const. art. 3, § 26).

¶78.    To conduct a proper constitutional analysis, "[t]he United State Supreme Court 'set

26

forth four factors to consider whenever a defendant alleges that his constitutional right to a speedy trial has been violated: (1) the length of delay; (2) the reason for the delay; (3) whether the defendant asserted his right; and (4) prejudice to the defendant.'" *McBride v. State*, 61 So. 3d 138, 142 (¶5) (Miss. 2011) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

¶79. Further, "[u]nder this Court's standard of review, this Court will uphold a decision based on [the] substantial, credible evidence." *DeLoach*, 722 So. 2d at 516 (¶12) (citation omitted). "If no probative evidence supports the trial court's finding of good cause, this Court will ordinarily reverse." *Id.*

### 1. Length of Delay

¶80. First, we must determine if the length of the delay prejudiced Scott. "A formal indictment or information or an arrest—whichever first occurs—triggers the constitutional right to a speedy trial." *McBride*, 61 So. 3d at 142 (¶8) (citing *United States v. Marion*, 404 U.S. 307, 320 (1971)). The Mississippi Supreme Court has held a delay of eight months is presumptively prejudicial. *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989) (citation omitted).

¶81. "When the delay is presumptively prejudicial[,] that does not mean that actual prejudice to the defendant exists." *Johnson*, 68 So. 3d at 1242 (¶7). However, "[a] 'presumptively prejudicial delay' acts as a triggering mechanism for further inquiry into the *Barker* analysis, and shifts the burden to the State to show the reason for delay." *Id.*

¶82. Under the constitutional speedy-trial analysis, the right attaches at the arrest or

27

indictment. Scott asserts he turned himself in to police on an arrest warrant from the incident in October or November 2009. There is evidence that Scott served a prison sentence until February 6, 2011. Scott alleges he served the remainder of another sentence due to an MDOC revocation based on his arrest for the July 3, 2009 incident. The record, however, does not fully support Scott's contention that he was first arrested in late 2009 for this crime.

¶83. Regardless, the record indicates that an indictment and capias were executed on September 26, 2011. Further, the trial did not commence until August 19, 2014. This results in a delay of 1,059 days. As such, the time between the indictment and the trial exceeded the eight-month mark to establish a presumption of prejudice. Thus, this factor weighs in favor of Scott and necessitates a full *Barker* analysis.

### 2. Reasons for Delay

¶84. Next, we must weigh the reasons for the delays. The first delay occurred from the indictment on September 26, 2011, until the arraignment on March 14, 2012. No reason appears in the record for this 171-day delay. This delay weighs against the State. However, as previously discussed, the majority of the delays between Scott's arraignment and trial were attributable to Scott or slightly to the State or were neutral reasons. Thus, this factor does not weigh against the State.

### 3. Assertion of the Right

¶85. Scott argues that he first asserted his right to a speedy trial in June 2010 and again on May 31, 2013. These motions, however, are not found in the record other than as Scott's assertions in his motions to dismiss. The record indicates that Scott first filed a pro se motion

to dismiss for speedy-trial violations on March 24, 2014. Scott filed a second pro se motion to dismiss on May 2, 2014, and a third motion to dismiss, with assistance of counsel, on August 14, 2014.

¶86. However, "a demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for speedy trial." *Perry v. State*, 637 So. 2d 871, 875 (Miss. 1994). Further, "[a]lthough it is the State's duty to [e]nsure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right. Failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *McGee v. State*, 928 So. 2d 250, 255 (¶18) (Miss. Ct. App. 2006) (quoting *Taylor v. State*, 672 So. 2d 1246, 1261 (Miss. 1996)).

¶87. The supreme court has found that a failure to demand a speedy trial and a delay in filing a motion to dismiss weigh in favor of the State. *Bailey v. State*, 78 So. 3d 308, 323 (¶52) (Miss. 2012) (where the defendant never demanded a speedy trial and waited 931 days to file a motion to dismiss, this factor favored the State); *DeLoach*, 722 So. 2d at 518 (¶21) (finding delay of one year and seven months before defendant brought motion to dismiss slightly favored State). Scott did not appear to assert his right to a speedy trial, but only filed three motions to dismiss for speedy-trial violations. Therefore, this factor weighs against Scott.

### 4. *Prejudice to Scott*

¶88. "When analyzing the last *Barker* factor, this Court should consider the following three interests: (1) preventing oppressive incarceration; (2) minimizing anxiety and concern of the

29

accused; and (3) limiting the possibility that the defense will be impaired." *Bailey*, 78 So. 3d at 323 (¶53) (citing *Jenkins v. State*, 947 So. 2d 270, 277 (¶21) (Miss. 2006)).

¶89. Scott argues this delay impaired his defense because of lost evidence and witnesses. "[T]he possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudice as a result of the delay." *Johnson*, 68 So. 3d at 1245 (¶18) (citation omitted). "Generally, this Court will find prejudice where 'there was a loss of evidence, the death of a witness, or the investigation became stale.'" *Id.* (citations omitted) (quoting *Manix v. State*, 895 So. 2d 167, 177 (¶22) (Miss. 2005)).

¶90. The delays contributed to the loss of evidence according to Scott. He argues that the delays resulted in the loss of police files, the 911-call recording, and Landry's written statement to police. While the loss of evidence could be prejudicial, the supreme court has "stated that 'the defendant must prove that this prejudice impaired a fair trial outcome; otherwise, such a claim is speculative.'" *Bailey*, 78 So. 3d at 323 (¶56) (quoting *Ross v. State*, 605 So. 2d 17, 23 (Miss. 1992)). Scott's argument appears speculative.

¶91. Primarily, Scott contends the loss of Landry's written statement prejudiced his defense because Landry made prior inconsistent statements and her written statement may have revealed additional inconsistencies. To support his position, Scott alleges a contradiction between Landry's testimony and her statement in Detective Jack Rayner's police report. The trial court, however, excluded Detective Rayner's police report from the evidence.

¶92. Further, Scott does not know the contents of Landry's written statement to demonstrate any inconsistency. Scott had the opportunity to cross-examine Officer Derek

Holmes, a responding officer who interviewed Landry, and called Detective Rayner on his behalf to testify to the July 3, 2009 incident. Scott also did not demonstrate what the missing police reports or the 911 recording may have shown. For these reasons, Scott failed to show that his defense suffered prejudice due to any lost evidence.

¶93. Scott also asserts the delay contributed to the loss of potential witnesses. He fails, however, to cite to the name or potential testimony of any allegedly lost witness. "Vague allegations of the existence of a poorly identified exculpatory witness do[] not constitute prejudice." *Manix*, 895 So. 2d at 177 (¶22). Thus, Scott's assertions of lost witnesses cannot support a claim of prejudice.

¶94. The lengths of the delays presumptively prejudiced Scott. But the factors of the reason for delay, the assertion of the right to a speedy trial, and the prejudice suffered all favored the State. Therefore, no speedy-trial violation occurred, and the trial court properly denied Scott's motions to dismiss.

> VII. *The State did not proffer perjured testimony, suppress evidence, or deny Scott's right to confront witnesses against him.*

¶95. As Scott's pro se arguments, aside from the speedy-trial issue, are interrelated, we combine these remaining issues into one. First, Scott asserts that the State knowingly used perjured testimony from Landry. Scott contends that the State suppressed Landry's statement to the Hattiesburg Police Department, and then elicited testimony that contradicted the statement. Scott also argues the State suppressed other evidence, and this suppression resulted in Scott's inability to confront the witnesses against him.

¶96. Scott fails to prove the State knowingly used perjured testimony. Scott asserts that

31

Landry's statement to police contradicted her testimony at trial. Landry's statement was not entered into evidence, and the details of the statement are not known. Further, there is no evidence to indicate Landry's statement was contradictory or under oath. *See* Miss. Code Ann. § 97-9-59 (Rev. 2014) ("Every person who shall wilfully and corruptly swear, testify, or affirm falsely to any material matter under any oath, affirmation, or declaration legally administered in any matter, cause, or proceeding . . . shall be guilty of perjury[.]"). Therefore, Scott cannot argue Landry's statement constituted perjured testimony.

¶97. Scott also contends the State suppressed Landry's statement to police. However, Scott previously attempted to suppress this evidence himself before trial. In an August 14, 2014 motion, Scott sought to either compel the trial court to dismiss the case due to the missing evidence or, in the alternative, suppress any evidence or testimony relating to the lost evidence, including Landry's statement to police. But a defendant is "procedurally barred from arguing a different ground on appeal than [what he] argued at trial." *Doss v. State*, 709 So. 2d 369, 379 (¶24) (Miss. 1996) (citation omitted). Therefore, Scott cannot now argue on appeal that the State suppressed Landry's statement.

¶98. In addition to suppression, Scott argues the State's loss of the evidence prejudiced his defense. While the record indicates that Landry's statement, along with other evidence, was lost due to the time between the incident and trial, Scott does not demonstrate the State purposely destroyed the evidence. "The State's duty to preserve evidence is 'limited to evidence that might be expected to play a significant role in the suspect's defense.'" *Staten v. State*, 813 So. 2d 775, 778 (¶11) (Miss. Ct. App. 2002) (quoting *Tolbert v. State*, 511 So.

2d 1368, 1372 (Miss. 1987)).

> To play a significant role, "the exculpatory nature and value of the evidence must have been (1) apparent before the evidence was destroyed and (2) of such a nature that the defendant could not obtain comparable evidence by other reasonable means." This constitutional materiality standard is not satisfied by the "mere possibility" that the evidence will help the defense. That evidence is "important" is not sufficient to fulfill the constitutional standard of materiality.

*Id.* (quoting *Jackson v. State*, 766 So. 2d 795, 801 (¶10) (Miss. Ct. App. 2000)). Scott does not show the State was required to preserve the evidence.

¶99. Scott merely asserts that Landry stated in her police statement that Scott pushed her onto her bed but her testimony at trial rejected that assertion. Landry testified that she and Scott were never on her bed. This contradiction, according to Scott, discredits Landry's testimony and demonstrates that he did not attempt to rape her. This evidence, however, is not exculpatory, as other evidence satisfied the elements of the crime. Therefore, the State did not suppress or fail to preserve crucial evidence.

¶100. Lastly, Scott contends the lost statement violated his right to confrontation because he could not cross-examine Landry regarding her prior statement. However, "the United States Supreme Court [has] held that the Confrontation Clause bars the admission of testimonial hearsay unless the witness is unavailable and the defendant had a prior opportunity for cross-examination." *Hingle v. State*, 153 So. 3d 659, 662 (¶7) (Miss. 2014) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). Thus, the Confrontation Clause only bars testimonial hearsay and only if the defendant could not previously cross-examine an unavailable witness. Because Scott enjoyed the opportunity to cross-examine Landry, the

Confrontation Clause bar does not apply in this case.  Therefore, this issue is without merit.

¶101.  **THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ATTEMPTED RAPE, AND SENTENCE AS A HABITUAL OFFENDER OF LIFE WITHOUT THE POSSIBILITY OF PAROLE; COUNT II, KIDNAPPING, AND SENTENCE AS A HABITUAL OFFENDER OF LIFE WITHOUT THE POSSIBILITY OF PAROLE; AND COUNT III, BURGLARY OF A DWELLING, AND SENTENCE AS A HABITUAL OFFENDER OF LIFE WITHOUT THE POSSIBILITY OF PAROLE, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.**

**LEE, C.J., IRVING, P.J., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.  BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**